JOHN PROCTOR AND ABNER MEAD *v.* REUBEN R. THRALL, WILLIAM WHEELER, SIMEON WRIGHT AND MARTIN LEACH.

[IN CHANCERY.]

Where the grantee of a mortgagor, being about to sell the mortgaged premises, procured the mortgagee to execute to the purchaser a bond, conditioned that the said grantee should save the purchaser harmless from all cost and damage in consequence of any previous incumbrance upon the premises, it was held, that the effect was, to release the land from the incumbrance of the mortgage.

The court of chancery will not interfere to correct, or restrain, the effect of contracts between parties, upon the ground that the effect is entirely different from what the parties intended at the time they made the contract, except in cases where the contract might still operate in the manner and to the extent, which the parties intended, when they made it, and its farther and different operation, which was not contemplated by them, be restrained. If the different operation of the contract, beyond what was intended, is merely a legal result from what they did intend, so that relief cannot be obtained, except by annulling the very contract understandingly and intentionally made, the court will not interfere.

A. mortgaged land to B., and then conveyed the land, subject to the mortgage, to C. C. conveyed the land, by deed with covenants of warranty, to D., and D., by deed with similar covenants, conveyed the land to E. But before E. completed the purchase, D. procured B. to execute a bond to E., conditioned that D. should save E. harmless from all cost and damages in consequence of any incumbrance upon the land,—the parties understanding, and so intending at the time, that this would discharge the land, in the hands of E., from the mortgage to B., but would leave B. the right to pursue his remedy against A., for his debt, and also to hold C. and D. upon their covenants of warranty, and to prosecute suits thereon in the name of E., but for his own benefit. *Held*, that the effect of the bond was, to discharge the land from the incumbrance of the mortgage, and consequently to release C. and D. from all obligation upon their covenants of warranty, so far as the mortgage was concerned, and that the court of chancery could grant no relief against this result.

APPEAL from the court of chancery. On the nineteenth day of January, 1828, Simeon Wright mortgaged certain land to Francis Slason, to secure the payment of five hundred dollars, specified in two promissory notes. On the eighteenth day of August, 1829, Wright mortgaged the same land to Reuben R. Thrall, to secure the payment of a note for $482,70; and subsequently Wright conveyed to Thrall his equity of redemption in the premises. Thrall subsequently conveyed the land, by deed with covenants of warranty, to William Wheeler; and Wheeler, in July, 1840, conveyed the land, by deed with warranty, to Martin Leach. But Leach refused to complete the purchase, unless he could have the land free from the incumbrance to Slason; and thereupon Slason, at the procurement of Wheeler, executed a bond to Leach, conditioned that Wheeler should save Leach harmless " from all cost and damage in consequence of any incumbrance " upon the land. On the twenty seventh day of January, 1842, Slason assigned his mortgage and the

notes from Wright to the orators. And the orators alleged, that it was understood and agreed, between Slason, Wheeler and Leach, at the time the bond was executed, that the bond was to have only the effect to secure Leach in the possession of the land, but that Slason was to have the benefit of the personal responsibility of Wright, Thrall and Wheeler, and of the covenants in the deed from Thrall to Wheeler, and in the deed from Wheeler to Leach, and the right to pursue any proper remedy thereon, either in his own name, or in the name of Leach; and the orators alleged, that Wright and Wheeler had become poor and unable to pay the debt. The orators prayed, that Leach might be decreed to permit them to have the benefit of the covenants of warranty in the deeds from Thrall and Wheeler, and that Wright, Thrall and Wheeler might be decreed to pay the debt to the orators, or, in default thereof, that the defendants might be placed under such equitable conditions, as to the chancellor should seem proper, and that they might be foreclosed of all equity of redemption in the premises, under proper equitable stipulations.

Wheeler, in his answer, admitted, that the bond was executed by Slason under the circumstances and with the understanding and intent alleged in the bill. Leach, in his answer, denied, that there was any understanding, other than that he was to have the land, released from any claim under the mortgage to Slason. Thrall and Wright demurred to the bill. Testimony was taken, upon both sides, as to the existence, at the time the bond was executed, of any such understanding as that alleged in the bill,—the substance of which is stated in the opinion delivered by the court.

The court of chancery dismissed the bill; from which decree the orators appealed.

*E. L. Ormsbee,* for orators, cited *Mower et al.* v. *Hutchinson,* 9 Vt. 242, and *Beardsley* v. *Knight,* 10 Vt. 185.

*Thrall & Smith* and *R. Pierpoint,* for defendants, insisted, that the effect of the bond executed by Slason was to discharge the land from the incumbrance of the mortgage,—citing *Paddock* v. *Palmer,* 19 Vt. 585;—that this effect was in fact intended by Slason, and that the true object of the bill was to obtain relief, for the reason

that Slason made the contract without understanding its legal consequences, which is not a sufficient reason for granting relief,—citing 1 Story's Eq., sec. 111–137, *Storrs* v. *Barker*, 6 Johns. Ch. R. 169, *Wheaton* v. *Wheaton*, 9 Conn. 96, *Pettes* v. *Bank of Whitehall*, 17 Vt. 445, and *Shotwell* v. *Murray*, 1 Johns. Ch. R. 512; and that the understanding, alleged in the bill, was not proved,—but that if it were, the orators could have no remedy upon the covenants of warranty, for the reason, that the release of the mortgage had prevented there being a breach of those covenants.

The opinion of the court was delivered by

POLAND, J.   The history of this case is substantially the following.   On the nineteenth day of January, 1828, the defendant Wright was the owner of a certain farm in Pittsford, and on that day he executed a mortgage of the same to Francis Slason, to secure the payment of two notes, both amounting to the sum of five hundred dollars.   On the eighteenth day of August, 1829, Wright executed another mortgage of the same land to Reuben R. Thrall, to secure the payment of a note of $482,70; and at some subsequent time, which is not stated in the papers, Wright conveyed the same premises to Thrall by an absolute deed.   Subsequently (but at what time the case does not show) Thrall conveyed the same premises, by deed with warranty, to William Wheeler; and in July, 1840, Wheeler conveyed the same by deed with warranty to the defendant Leach. At the time of the conveyance from Wheeler to Leach, Slason executed to Leach a bond, in which he covenanted to save him harmless against all cost and damage in consequence of any previous incumbrance upon said farm.   Slason afterwards, on the twenty seventh day of January, 1842, assigned to the orators his mortgage deed and notes from Wright.

The orators concede, that the effect of the bond given by Slason to Leach was, to release the land from the burden of his mortgage; and we have no doubt, but such must be its operation.   It is much like the case of a covenant not to sue, which has always been held equivalent to a release, or discharge; for the law would countenance no such absurdity, as to allow one man to maintain an action to recover lands, or damages, and then permit another suit to recover back the same thing; it therefore allows the defence to be made in

the first instance, to avoid circuity of action. 1 U. S. Digest 678. 7 Mass. 155. 15 Ib. 112. 16 Ib. 24. 17 Ib. 728. 1 Cow. 122. 8 Johns. 54.

It is, however, insisted by the orators, that at the time the bond in question was executed and delivered by Slason to Leach, the parties to it did not understand, what the legal effect of the bond would be upon Slason's mortgage; and they allege in their bill, that at the time of the execution of the bond by Slason to Leach, it was understood and agreed between them, that Slason was to have the full benefit of the covenants in the deed of Thrall to Wheeler, and in the deed from Wheeler to Leach, and to have the right to pursue any proper remedy, either at law, or in equity, in his own name, or that of Leach, to enforce said covenants.

It might admit of serious doubt, perhaps, whether, upon the evidence in this case, the fact of such understanding and agreement was established between Slason and Leach, inasmuch as Leach directly denies in his answer, that there was any such understanding between them, and his answer is only contradicted by the testimony of one witness, and that of the admissions of Leach merely. Wheeler, in his answer, says, there was such an agreement; but that, of course, cannot be used as evidence against the other defendants in the case. The manner in which the business was done has some tendency, however, to support the belief of what the orators claim to have been the understanding of the parties to the bond, at the time of its execution, and in deciding the case we are disposed to consider the case as proved in favor of the orators, upon this point.

The orators admit, that Slason intended, when he executed the bond to Leach, to release the land, in Leach's hands, from the incumbrance of his mortgage, and to discharge Leach from any liability to him; and that Leach, relying upon Slason's bond, purchased the farm of Wheeler, which otherwise he would not have done; and it is not now insisted, that the bond has any other or different effect, so far as the defendant Leach is concerned, than was intended by Slason himself; and neither is it claimed, that the court of chancery ought to interfere, as between Slason and Leach. The orators' claim is, that, by the agreement between Slason and Leach, at the time the bond was executed, Slason was to retain all

his rights against the previous parties, and was also to have the benefit of Leach's remedy against Thrall and Wheeler, upon the covenants in their respective deeds.

It may not be improper to consider for a moment, what rights either Slason, or Leach, had, as against the previous parties in the chain of title. Slason had his mortgage and notes against Wright, and he might pursue the mortgage upon the land, or he might look to Wright personally upon his notes, without regard to the mortgage. His only right, or remedy, as against the subsequent parties, Thrall, Wheeler, or Leach, was by virtue of his mortgage upon the land,—being a pre-existing incumbrance, and to be satisfied out of it, before their title could be good and perfect. His whole claim, however, was upon the land; and whatever might operate to release the land from his *lien* by virtue of his mortgage would entirely destroy all *his* rights, as against all the previous parties, except Wright. What, then, were the rights of Leach, or what would they have been, rather, if Slason had not executed the bond in question? He had no claim, or right of action, against Wheeler, or Thrall, except as connected with the land. If he were disturbed in his title or possession of that, he might then seek a remedy against them upon their covenants. He could maintain no action upon his covenants, at least for the recovery of any thing more than mere nominal damages, until he had either been evicted from the land, or had been compelled to remove the incumbrance upon it. His rights upon the covenants of Wheeler and Thrall were merely to be indemnified in the title and possession of the premises. The bond of Slason to him having effectually released the land in his possession from the mortgage, and thus placed him out of danger of any eviction under it, his claim upon the covenants of Wheeler and Thrall is also discharged, and he has no right remaining against them, which can be enforced either by himself, or Slason.

It is undoubtedly true, that courts of chancery do often interfere, for the purpose of correcting agreements and contracts of almost every description, when the legal effect of the contract is entirely different from what the parties intended at the time it was made; and this, too, in cases, where the mistake of the parties was in relation to the effect merely, and so might be said to be rather a mistake in relation to the law, than of fact. Such was the case of

*Mower et al.* v. *Hutchinson,* 9 Vt. 242, cited by the orators. But we apprehend, that the courts of chancery have never interfered to correct or restrain the effect of contracts between parties upon this ground, except in cases, where the contract might still operate in the manner and to the extent the parties intended, when they made it, and its farther and different operation, which was not contemplated by them, be restrained. In the case of *Mower et al.* v. *Hutchinson* the parties intended their quit claim deeds to have the operation merely to divide a farm, which they before owned jointly; but the effect of Mower's deed was to cut off a right, which he had, to flow a portion of the same farm. The court restrained the operation of the deed, beyond what the parties intended by it; but the effect intended by the parties remained.

In the present case Slason intended to release his *lien,* by virtue of his mortgage, to Leach, and did so. Leach acted upon it and purchased the farm, which otherwise he would not have done. The legal effect of this release to Leach was, to discharge all claim upon the land, and upon the covenants of Wheeler and Thrall to Leach, —as their liability depended entirely upon the mortgage remaining as a subsisting *lien* upon the land, and thus enforced against Leach.

The orators do not claim, that there is any ground for setting aside the bond, as against Leach, because it has the very effect, as to him, which Slason intended. Unless it is set aside as to Leach, the orators can have no relief against the other defendants,—as his claim against them must be through Leach alone, who is discharged; so that in this case the different operation of the contract, beyond what was intended, is merely a legal effect, or result, of what they did intend; and the court cannot interfere to relieve the party, except by annulling the very contract understandingly and intentionally entered into by the one party and received and acted upon by the other. It is believed, that no case can be found, where the court of chancery have ever gone to that extent; and we do not see, that there was any sufficient ground to justify such a call upon the chancellor in the present case.

The decree of the chancellor is affirmed, with additional costs, and remanded to the court of chancery to be carried into effect.