PHINEAS A. STONE *vs.* ST. LOUIS STAMPING COMPANY.

Suffolk.   November 17, 1891. — January 6, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Extension of Lease — Waiver — Former Judgment — Evidence.*

Under a lease for a certain term, yielding and paying a certain rent, and, at the election of the tenant upon giving thirty days' notice, for a further term, yielding and paying an increased rent, the provision for notice is solely for the benefit of the lessor, who can waive it, and an election to hold for the additional term at the increased rent may be inferred as against the lessee from his continuing to occupy the premises and paying the rent at the increased rate, without proof of notice or formal election at the expiration of the first term.

Where an action was brought to recover rent for the month of June and four subsequent months under a lease, and where the defendant introduced the record of an action between the same parties to recover rent for the month of May under the same lease, in which action a judgment was rendered in favor of the defendant, and where there was evidence that in the former action issues were tried which did not arise in the later case, and where the defendant did not make it clear that the former case was decided on issues that were necessarily decisive of the later case, it cannot be said, as matter of law, that the former judgment is a bar to the later action.

Where the record of a former action, in which the defendant recovered judgment on which he relies as a bar to the present case, did not show the ground on which the former case was decided, it was *held* to be competent to prove it by parol evidence, but that the full report of the evidence taken at the former trial was rightly excluded.                                               ;

CONTRACT to recover $541.66, for rent of the plaintiff's store in Boston, for the months of June to October, 1889, inclusive, under an extension of a lease between the plaintiff and the defendant dated September 1, 1887.   Trial in the Superior Court, before *Dunbar*, J., who ordered a verdict for the defendant, and

reported the case for the determination of this court, in substance as follows.

The following is the material part of the lease relied upon : " To have and to hold the said store and other premises hereby leased unto the said St. Louis Stamping Company, and their representatives, from the first day of September, A. D. 1887, during the full term of one year thence next ensuing, unless sooner terminated as hereinafter provided. It is further agreed that this lease may be extended for two years by lessee's giving thirty days' notice of such intention, the conditions to remain unchanged, except that an additional eight and one third dollars per month shall be paid, making the annual rent thirteen hundred dollars. Yielding and paying (except only in case of fire or other casualties hereinafter mentioned), as rent, the sum of $1,200 yearly, by equal monthly payments, as follows, to wit: $100 on the first day of each month in every year during said term, and at that rate for such further time as the said lessees or any other person or persons claiming under them shall hold the premises, or any part thereof; the first monthly payment to be made on the first day of October, now next ensuing; and the last monthly payment thereof to be made on the last day of August, A. D. 1888."

It appeared in evidence that the defendant entered on and occupied the premises from the beginning of the term until April 30, 1889, paying rent in monthly instalments of one hundred dollars on the first day of each month up to and including September 1, 1888; and on October 1, 1888, and on the first day of each month thereafter one hundred and eight dollars and thirty-three cents, until the defendant vacated the premises on April 30, 1889, when one hundred and eight dollars and thirty-three cents was paid as rent for the month of April. The defendant gave notice of its intention to quit the premises in March, 1889.

No notice was ever given of any intention to extend the lease, and there was never any conversation regarding the same until October 1, 1888, when the plaintiff called at the premises and had an interview with one Ferry, employed by the defendant. The plaintiff testified that Ferry wanted to know why the rent was increased; that the plaintiff then showed the lease to Ferry,

who said it was all right, and that they should remain; that Ferry said, "We will continue to pay," and they did pay. Ferry denied that he said that they should continue to occupy, and further testified that he had no instructions from the defendant company relative to an extension of the lease, and that the lease was kept at St. Louis. The increased rent was paid on October 1, 1888, and thereafter, by Ferry's personal checks; statements of the expenses of the Boston store, including rent, were sent monthly to the office of the company in New York, and there was evidence tending to show that the defendant company had seasonable notice of the payment by the agent of the increased rent, as provided in case of a renewal of the lease.

The defendant introduced in evidence the record, consisting of docket entries and papers in an action in the Superior Court between the same parties, brought to recover rent of the same premises under the same lease for the month of May, 1889, wherein the defendant recovered judgment; and it contended that the judgment in the former action was a bar to this action.

The defendant called as a witness a typewriter, who produced a typewritten copy of the notes of the testimony of the former trial, made by the official stenographer, in pursuance of an agreement of the parties filed in the former case, and offered the copy in evidence; but the court excluded it, and the defendant excepted.

There was other testimony as to what took place at the former trial, which was admitted subject to the plaintiff's objection, as follows. The plaintiff on cross-examination testified that there was no evidence at the former trial in regard to payment of the month's rent then sued for, and on direct examination Ferry also so testified. The latter also testified that in the former action there was evidence as to the extension of the lease, and evidence as to his own instructions and authority relative thereto, and as to a surrender of the lease and delivery of the keys. On cross-examination Ferry testified that evidence was put in on three or four different issues. It also appeared by the papers in the former action that the defendant therein denied each and every allegation in the plaintiff's writ and declaration, and pleaded the statute of frauds, which was not set up, however, as a defence in the present case.

If, upon the foregoing evidence, the jury would be warranted in finding a verdict for the plaintiff, judgment was to be entered for him in the sum of $541.65, with interest from the date of the writ; otherwise, judgment for the defendant.

*S. J. Thomas & C. W. Bartlett*, for the plaintiff.

*W. O. Kyle*, for the defendant.

KNOWLTON, J.   The lease under which this action is brought, after stating the term as one year, contains the following language: " It is further agreed that this lease may be extended for two years by lessee's giving thirty days' notice of such intention, the conditions to remain unchanged, except that an additional eight and one third dollars per month shall be paid, making the annual rent thirteen hundred dollars." This does not contemplate the making of a new lease, but provides that the term shall be three years instead of one, if the lessee so elects. It is like the leases set out in *Kramer* v. *Cook*, 7 Gray, 550, and *Bradford* v. *Patten*, 108 Mass. 153.   In order to hold the defendant for rent in this action, the plaintiff must show that the defendant elected to extend the term.   This election could not be effectual against the lessor unless the lessee gave thirty days' notice of it before the expiration of the year.   But the provision for notice was solely for the benefit of the lessor, and he could waive it.   No writing was necessary, and no formal action, if in fact the lessee elected to hold for the longer term, and if he gave thirty days' notice of the election, or the lessor waived the giving of notice.

There was evidence that the defendant's agent, a month after the expiration of the year, being shown the lease, said the increase of rent was all right, and that the defendant would remain and continue to pay.   Afterwards the rent was paid monthly, without question, for six months more, before notice was given of an intention to terminate the tenancy.

If the defendant's agent were the lessee, there could hardly be a question that this would warrant, if not require, a finding that the lease was extended in accordance with its provisions. We are of opinion that the evidence is sufficient to warrant such a finding against the defendant.   There was evidence that the lease was in possession of the defendant, and that statements of the expenses of the Boston store, including the rent, were sent

monthly to the office of the defendant in New York, and that the defendant "had seasonable notice of the payment by the agent of the increased rent, as provided in case of a renewal of the lease." Moreover, the lease provides that, if the lessee holds over, the rent shall be at the original rate. This makes the payment of increased rent significant. Such payments by the defendant, continuing for six months without objection after the interview between the plaintiff and the defendant's agent, even without its being expressly shown that the defendant's managing officers were informed of the interview, are enough to justify a jury in finding an election to continue the lease. It may fairly be inferred, without express testimony, that the defendant's officers understood the circumstances under which the tenancy was continued.

The case, in its principal features, is almost identical with *Kramer* v. *Cook, ubi supra,* in which it is said that "the continuing to occupy the premises, and the payment of the rent at the increased rate stipulated for in case of continuance, were the best possible evidence of the election of the defendant to avail himself of the further term. . . . If it was necessary to prove that the election of the defendant was made at the time of the expiration of the three years, the evidence was ample for the purpose. He continued to occupy after the expiration of the three years. He paid the increased rent stipulated for from the time the three years expired. There is nothing in the case to indicate that at any time he claimed to occupy on any other terms." In *Bradford* v. *Patten, ubi supra,* a somewhat similar case, it is implied that much less evidence would present a question of fact on which a finding in favor of the lessor might be made.

The only remaining question is whether this action is barred by the judgment in the former suit between the same parties. That was not for the same cause of action, and so it is not conclusive against the plaintiff, except on such issues as are shown to have been tried and determined in it. *Foye* v. *Patch,* 132 Mass. 105, and cases cited. Inasmuch as the record does not show the ground on which it was decided, it was competent to prove it by parol evidence. But the full report of the evidence taken at that trial was rightly excluded. Much of the evidence

might have been prejudicial to one or the other of the parties on the points in dispute in this trial, and the defendant had a right to show only what issues were actually tried and determined. To do that, it might be necessary to prove what some of the evidence was, and the defendant was rightly permitted to go as far as it chose in showing what matters were made a subject of testimony, and what issues were finally submitted to the jury. But the defendant failed to go far enough to make it clear that the jury decided that case on issues which are necessarily decisive of this. There was a general verdict, and very likely it is impossible to prove what the decision of the jury was on any particular issue, or whether they decided the case on any issue involved in the present suit. At the former trial there was evidence that the keys were returned, and an issue was raised on the question whether the plaintiff had accepted a surrender of the premises, on which evidence was offered on both sides.

We do not know what view the jury took of that evidence, nor whether their verdict against the plaintiff might not have been founded upon it. No evidence was introduced on this issue at the trial of this case, and the defendant cannot now avail itself of a defence depending upon it. The answer in the former case set up the statute of frauds as a defence, and there is nothing to show that the judge may not have ruled in favor of the defendant on that part of its defence, and that the verdict may not have been rendered on that ground. In the present case that defence is not set up in the answer, and is not open to the defendant. The general denial in the answer in the former suit put in issue other matters which are not questioned in this case, and it is impossible to say that at the former trial the verdict may not have been rendered against the plaintiff on account of its failure on some of these. It cannot be said, as matter of law, on the evidence before us, that the former judgment is a bar to this action.

According to the terms of the report, there must be

*Judgment for the plaintiff.*