MARTHA A. HARRIS *v.* J. D. MASON.

(*Jackson.*   April Term, 1907.) *

1. **CLOUD UPON TITLE.** In suit to remove cloud upon title, complainant must show the true title to be in himself; same rule in ejectment.

   In a suit to remove a cloud from title, as well as in an action of ejectment, it is essential that the complainant allege and prove the true title to the land to be in himself; for the establishment of his own title is an essential preliminary step to the impeachment of the validity of the defendant's title, as in neither suit can the weakness of the defendant's title be relied upon for redress. (*Post, pp.* 671, 675.)

2. **SAME.** Same. Dismissal of complainant's bill to remove cloud upon title for failure to establish title in himself is not res adjudicata of the validity of defendant's title, when.

   Where, in a suit to remove a cloud from title, it is decreed that complainant has failed to establish the title to be in himself, and that his bill is, therefore, dismissed, the validity of the defendant's title is not determined and adjudicated; and in a subsequent ejectment suit by such defendant to recover the land from one in possession thereof as privy in estate to such complainant, such plaintiff in ejectment cannot invoke the rule of *res adjudicata* in aid of his invalid tax deed, which was in the former suit, sought to be removed as a cloud upon the title, because it did not clearly appear that the validity of such tax title was determined and adjudicated in the former suit, and because the decree, by proper construction, showed that the validity of such tax title was not determined and adjudicated. (*Post, pp.* 671-694.)

   *This case was decided during the April term, 1907, but the opinion was not, until this time, ordered by the court to be published.

Harris v. Mason.

Cases cited and approved: Estell v. Taul, 2 Yerg., 467; Bugg v. Norris, 4 Yerg., 325; Nicholson v. Patterson, 6 Humph., 394; Warwick v. Underwood, 3 Head, 238; Thompson v. Blanchard, 2 Lea, 528; Brewster v. Galloway, 4 Lea, 558; Fowlkes v. State, 14 Lea, 14; Boyd v. Robinson, 93 Tenn., 1; State v. Bank, 96 Tenn., 591; Donaldson v. Nealis, 108 Tenn., 638; Borches v. Arbuckle, 111 Tenn., 500; Packet Co. v. Sickle, 24 How., 333; Packet Co. v. Sickle, 5 Wall., 580; Russell v. Place, 94 U. S., 606; De Sollar v. Hanscome, 158 U. S., 216; Gaslight Co. v. District of Columbia, 161 U. S., 316; Railroad v. United States, 168 U. S., 1; Chrisman v. Harman, 29 Gratt., 500; Solby v. Clayton, 12 Colo., 38; Sawyer v. Nelson, 160 Ill., 631; Lewis v. Navigation Co., 125 N. Y., 341; Littleton v. Richardson, 34 N. Y., 179; Foye v. Patch, 132 Mass., 105; Stone v. St. Louis Stamping Co., 155 Mass., 267; Pencoth v. Abraham, 43 La. An., 214; Kidd v. Laird, 15 Cal., 161; Bell v. Merrifield, 109 N. Y., 202; Cook v. Bumley, 45 Tex., 97; Nesbit v. Improvement Co., 144 U. S., 610; Fahey v. Esterly Machine Co., 3 N. D., 220, and 44 Am. St. Rep., 562, and note; McDowell v. Langdon, 3 Gray, 513; Berlin v. Shannon, 3 Gray, 387; Berlin v. Shannon, 99 Mass., 200; Hooker v. Hubbard, 102 Mass., 245; Aiken v. Peck, 22 Vt., 262.

Cases cited and distinguished: Parkes v. Clift, 9 Lea, 524; Knight v. Atkisson, 2 Tenn. Chy., 384; Werlein v. New Orleans, 177 U. S., 390; Parish v. Ferris, 2 Black, 606; Chiles v. Champenois, 69 Miss., 603.

3. **TAX TITLES.** Failure of county trustee to file certified list of sales in office of circuit court clerk prevents title vesting in the State treasurer and is fatal to tax deed.

Where the county trustee in tax sales made by him failed to file in the office of the clerk of the circuit court a certified list of the lands struck off to the State treasurer as required by statute (Acts 1897, ch. 1, sec. 63) under which the sale was made, no title vested in the State treasurer, and a deed made by the circuit court clerk to a purchaser after the expiration of the two years allowed for redemption was a nullity. (*Post*, *pp*. 694-697.)

Harris v. Mason.

Acts cited and construed: Acts 1897, ch. 1, sec. 63.

Cases cited and approved: Tax Title Cases, 105 Tenn., 245.

4. **SAME.** Same. Failure to file the certified list of tax sales at the proper time cannot be cured by a subsequent filing thereof.

The failure of the county trustee to file in the office of the circuit court clerk a certified list of the lands struck off to the State treasurer as required by statute at the time of the sale cannot be cured by a subsequent filing of such list after the deed is made by the clerk, for such filing of such list cannot operate by relation to validate a sale that was an absolute nullity, giving the purchaser no equitable title whatever. (*Post, pp.* 695, 697, 698.)

Acts cited and construed: Acts 1897, ch. 1, sec. 63.

Case cited and approved: Condon v. Galbraith, 106 Tenn., 14.

5. **SAME.** Same. Same. Failure to file such certified list is not cured by the prescription or curative limitation statute of three years, when.

The purchaser of land, with the deed of the clerk of the circuit court, sold for taxes and struck off to the State treasurer, when the county trustee failed to file in the office of the clerk of the circuit court, at the time the sale was made, as required by statute, a certified list of the lands so struck off to the State treasurer, can not avail himself of the prescriptive or curative limitation of three years prescribed in the statute so as to cut off all impeachment of the tax title after the lapse of the statutory period; for ample scope is given for the operation of this provision in preventing the impeachment of the title for mere irregularities in a tax sale. A contrary construction of this provision would clearly contravene the policy of this State as clearly announced in former cases. (*Post, pp.* 697, 698.)

Acts cited and construed: Acts 1897, ch. 1, sec. 71.

Cases cited and approved: Tax Title Cases, 105 Tenn., 245; Condon v. Galbraith, 106 Tenn., 14.

FROM MADISON.

Appeal from the Circuit Court of Madison County— S. J. EVERETT, Judge.

BULLOCK & TIMBERLAKE, for plaintiff.

C. G. BOND and T. K. REDDICK, for defendant.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This is an action of ejectment in which the plaintiff must show title and also the right of possession to the real estate in controversy. To maintain her right of recovery the plaintiff below invoked the rule of *res judicata* in aid of her deed, and the failure of the trial judge to give her the benefit of the rule is insisted upon as error.

The facts essential to the consideration of this contention, as well as of other errors assigned, are, that, in the year 1898 one W. J. Caesar became a purchaser of this property at a sale made under a decree of foreclosure pronounced by the United States circuit court sitting at Jackson, Tennessee, of a mortgage or trust deed made by John S. Smith and wife, and as such purchaser was in 1899 placed in possession of the same. No question is here made upon the regularity of the foreclosure pro-

ceeding, or that by his purchase Caesar acquired a title in fee. The defendant in error Mason, through a series of regularly executed conveyances, connects himself with and is a privy in estate with Caesar.

This property was assessed for the State and county taxes of 1896, in part to J. S. Smith, and in part to J. M. Smith, the latter having acquired an interest in a portion thereof, subject however, to this mortgage or trust deed. These taxes were not paid, so that, after due advertisement, on the first Monday in September, 1897, the trustee of Madison county sold or attempted to sell the property to the treasurer of the State of Tennessee. The two years for redemption having expired, the plaintiff in error, Mrs. Harris, purchased the property and took a deed from the clerk of the circuit court of the county.

In March, 1900, W. J. Caesar filed his bill, in the chancery court of Madison county, against Mrs. Harris in which he alleged that he was the owner in fee of the property in question, and setting out the facts concerning its assessment for the tax of 1896, the sale of the same by the trustee to the State treasurer and by the clerk to Mrs. Harris, it was then alleged that this sale, for various reasons assigned, was void, and the complainant therefore prayed that the deed to Mrs. Harris be removed as a cloud upon his title. An answer was filed in which the defendant denied complainant's claim of title, and further denied every allegation of the bill which tended in any degree to impeach her title. Notwithstand-

ing this answer, putting in issue the title which complainant set up in himself, the case went to trial without any evidence showing that he had title to or possession of the land in controversy with the result that the chancellor dismissed the bill, holding in his decree that complainant had "failed to establish any right, title or interest in or to the land in controversy."

After this dismissal, but before the entry of the decree, complainant, upon an affidavit of his counsel showing "oversight or misadventure" on his part, asked leave to put in evidence the deed from the special master of the United States circuit court, sitting at Jackson, conveying to him the land in controversy in pursuance of a decree pronounced in the foreclosure proceeding in that court. This was denied and a decree of dismissal was entered. On appeal to this court the decree of the chancellor was reversed and the cause was remanded in order that the complainant might have an opportunity to show his title.

Upon the remand when the case came on for trial again in the chancery court, the counsel for complainant Caesar, to show title in his client, contented himself with filing and putting in evidence the deed of the special master, referred to above, without more, when again the cause was dismissed, the chancellor stating in his decree as follows:

"And it therefore appearing to the court that the deed of J. P. Clough, clerk and special commissioner, to the complainant W. J. Caesar is insufficient in law to estab-

lish any title in complainant, and that the complainant in this cause is not entitled to any relief; it is, there- fore, adjudged, ordered and decreed that complainant's. bill be dismissed  .  .  ."

Upon appeal, in disposing of the cause, this court en- tered the following decree: "This cause was heard upon the transcript of the record from the chancery court of Madison county, and, it appearing to this court that in the decree of the court below dismissing complainant's bill there is no error, it is, therefore, ordered, adjudged and decreed by the court that said decree of the court below be, and the same is hereby in all things affirmed."

Subsequent to this disposition of that cause the pres- ent action of ejectment was instituted by Mrs. Harris against the defendant in error, and in it she rests her title and right to recovery upon her deed from the cir- cuit court clerk supported by the decree in the chancery court, affirmed in this court, which she insists estops the defendant in error as a privy in estate with Caesar from now raising any question upon the regularity of the tax sale, or validity of her deed.

In the chancery cause, as is seen from the statement heretofore made, there were, by the complainant in that cause, presented for determination two issues, first, that, the complaint had the title in fee to the land in question; and second, that the deed made by the circuit court clerk to Mrs. Harris, was a cloud upon the true title, which he had a right to have removed. If the de- cree of the chancellor, affirmed by this court, involved a

consideration and determination of this last question against the complainant in the cause, then we think that the plaintiff below could invoke that decree in aid of her deed and absolutely estop the defendant below in calling in question this muniment of title.

Looking, however, to the record in the chancery cause, we think it evident that the complainant therein never reached the point where he could or did invoke a consideration by the court of the question as to the validity of the title of Mrs. Harris. Unless he was the owner of the true title it was not in the mouth of the complainant to impeach the claim of Mrs. Harris. Lacking such title he had no right to put her to the defense of her alleged title. The establishment of his own was an essential preliminary step to the impeachment of her claim. In the bill filed to remove the deed of Mrs. Harris as a cloud upon his title, it was as necessary for the complainant to allege, and afterwards prove, that he was the owner of the true title, as this is essential in an action of ejectment; in neither case can the weakness of the defendant's title be relied upon for redress.

Confessedly, in the first trial in the chancery court the cause was dismissed because of the failure of the complainant to show title. There was no pretense then of an adjudication of Mrs. Harris' claim. At the trial occurring after the remand by this court the complainant again failed in this regard and his bill was dismissed by the decree, hereinbefore set out, which was afterwards affirmed by this court.

That the chancellor's decree is limited to this single issue we have no doubt.   We think this is its necessary construction.   In this decree it is expressly determined that the deed of the master and special commissioner "is insufficient in law to establish any title in complainant, and (therefore), that the complainant in this cause is not entitled to any relief."   The word "therefore" interpolated above was a mere ellipsis supplied under well settled rules.   Thus, we have not two independent grounds for the dismissal of the bill but a single one, that is, that the deed alone was of itself insufficient to establish title in complainant, and for this reason he was not entitled to relief.

So it may be taken as settled on the record that the question of the validity of Mrs. Harris' deed, while presented by the pleadings in that cause, was neither considered or determined, and if defendant in error is concluded by the decree of dismissal on this point, then it must be on the ground urged by plaintiff in error, that being one of the issues involved in the cause that the decree of dismissal was conclusive, without regard to the fact whether or not it was considered and decided.   In other words, the proposition which the counsel of plaintiff in error submits as controlling is, that "a judgment is conclusive between the parties not only as to such issues as were in fact determined in that proceeding, but as to every other matter which the parties might have litigated as incident to or essentially connected with the subject-matter of litigation whether the same, as a mat-

Harris v. Mason.

ter of fact, were or not considered." To this proposition counsel cites *Irrigation Co.* v. *Middaugh,* 12 Colo., 434; 13 Am. St. Rep., 234; *Gould* v. *Sternberg,* 128 Ill., 510; 15 Am. St. Rep., 142; *Lorillard* v. *Clyde,* 122 N. Y., 41; 19 Am. St. Rep., 473; *Huntley* v. *Holt,* 59 Conn., 102; 21 Am. St. Rep., 71, 73; *Aurora City* v. *West,* 7 Wallace, 82; *Werlein* v. *New Orleans,* 177 U. S., 395; *Parkes* v. *Clift,* 9 Lea, 524; *Knight* v. *Atkisson,* 2 Tenn. Chy., 384.

It must be conceded that the general proposition insisted upon by the counsel of the plaintiff in error is recognized by the cases thus relied upon and when applied within proper limitations is entirely sound. There is no doubt that, where an issue, question, or fact is submitted to and determined by a court of competent jurisdiction, the judgment of that court is conclusive upon the parties and their privies in every subsequent action involving the same issue.

In *Southern Pacific Railway Company* v. *United States,* 168 U. S., 1, it is said, "The general principle announced in numerous cases is, that a right question or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground for recovery cannot be disputed in a subsequent suit between the same parties, or their privies; and, even if the second suit is for a different cause of action, the right, question or fact, once so determined must, as between the same parties or their privies, be regarded as conclusively established so long as the judgment in the first suit remains unmodified." In support of this general principle many cases are cited by the court.

In *Russell* v. *Place,* 94 U. S., 606, it was held "that judgment of a court of competent jurisdiction upon a question directly involved in one suit is conclusive as to that question in another suit between the same parties; but to this operation of the judgment it must appear either upon the face of the record, or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head . . . as for example; if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of these was litigated and upon which the judgment was rendered . . . the whole subject-matter will be at large and open to a new contention unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. As illustrating this principle the court referred to the case of *Steam Packet Company* v. *Sickle,* twice in the supreme court of the United States as follows: "Thus in the case of the *Steam Packet Company* v. *Sickle,* reported in 24 Howard, 333, a verdict and judgment for the plaintiff in a prior action against the same defendant on a declaration containing a special count upon a contract and the common counts was held by this court not to be conclusive of the existence and validity of the contract set forth in the special count, because the verdict might have been rendered without reference to that count and only upon the common counts. Extrinsic evidence showing the fact to

have been otherwise was necessary to render the judgment an estoppel upon those points. When the same case was before this court the second time, *Steam Packet Co. v. Sickle,* 5 Wallace, 580, the general rule with respect to the conclusiveness of a verdict and judgment in a former suit between the same parties, when the judgment is used in pleading as an estoppel, or is relied upon as evidence, was stated to be substantially this: That to render the judgment conclusive it must appear by the record of the prior suit that the particular matter sought to be concluded was necessarily tried or determined, . . . that is, that the verdict in the suit could not have been rendered without deciding that matter; or it must be shown by extrinsic evidence, consistent with the record, that the verdict and judgment necessarily involved the consideration and determination of the matter." See also *De Sollar v. Hanscome,* 158 U. S., 216; *Washington Gaslight Co. v. District of Columbia,* 161 U. S., 316. To the one or the other of the propositions announced in *Russell v. Place, supra,* authorities without number may be cited in support. Among them are *Chrisman v. Harman,* 29 Gratt., 500, 26 A. R., 390; *Solby v. Clayton,* 12 Colo., 38; *Sawyer v. Nelson,* 160 Ill., 631; *Lewis v. Ocean Nav. Co.,* 125 N. Y., 341; *Littleton v. Richardson,* 34 N. Y., 179, 66 Am. Dec., 759; *Foye v. Patch,* 132 Mass., 105; *Stone v. St. Louis Stamping Company,* 155 Mass., 267; *Pencoth v. Abraham,* 43 La. An., 214; *Kidd v. Laird,* 15 Cal., 161; *Bell v. Merrifield,* 109 N. Y., 202, 4 Am. St. Rep., 436; *Cook v. Burnley,* 45 Tex.,

97; *Nesbit* v. *Riverside Imp. Co.,* 144 U. S., 610; *Fahey* v. *Esterly Machine Co.,* 3 N. D., 220, 44 Am. St. Rep., 562, and especially the note to this last-named case.

In *McDowell* v. *Langdon,* 3 Gray, 513, it was adjudged that a verdict and judgment are not conclusive unless it appears by the record, or by parol evidence in addition thereto, that the successful party in the former suit prevailed upon the very issue in support of which he offers the record in evidence. There the two cases were between the same parties and of the same nature. In the first the defendant pleaded not guilty to the charge of obstructing the flow of water to the plaintiff's mill, and also a right to use the water in the manner complained of. When he relied upon the record of the first judgment in his favor as a bar to the second action for similar subsequent torts it was left doubtful on which of the two grounds he prevailed at a former trial and for this cause the court held that the plea could not be sustained.

In *Berlin* v. *Shannon,* 99 Mass., 200, it was held that a verdict in judgment are conclusive by way of estoppel only as to those facts which were necessarily involved in them and without the existence and proof of which such a verdict and judgment could not be rendered. In this case the court say, that in *Berlin* v. *Shannon,* 3 Gray, 387, the true principle is distinctly announced by Shaw, C. J., in these words: "It is only when a fact is specially put in issue, traversed and tried, that a verdict and judgment following it are evidence against a party.

This rule is clearly stated by Mr. Herman, with supporting authorities, in section 279 of his work on Estoppel. "In order that a judgment in one action shall be conclusive in another it must appear with convenient certainty that the question in controversy in the second suit was litigated and decided in the first. When this appears on the face of the proceedings in the former action, the mere production of the record will be enough. A judgment which is responsive to the issues necessarily involved cannot be controlled by proof of what was, or was not tried; but where, as often happens, it is not, it must be shown *aliunde* by parol evidence, and the burden of proof rests on the party who maintains the affirmative."

In Freeman on Judgments, in section 276, the author embodies in his text an excerpt from an opinion of the supreme court of Massachusetts, with approval in the following language: "To be a bar to future proceedings it must appear that the former judgment necessarily involved the determination of the same fact, to prove or disprove which it is offered in evidence. It is not enough that the question was in issue in the former suit, it must also appear to be precisely determined, where in the answer various matters of defense are set forth, some of which relate to the maintenance of the suit and others to the merits, and there is a general decree of bill dismissed, it is impossible to hold the decree a bar to future proceeding."

This would seem to be in accord with sound principle. While it is a matter of public policy that parties or their privies should not be permitted to controvert in a legal or equitable forum an issue, or a fact, tried and determined in an earlier litigation, yet the same policy would forbid that a party or privy to such litigation shall be estopped where the issue or fact in question was either not litigated, or not determined. And it would seem also, true, that where a party in a matter of this character invoked the rule of *res adjudicata* he should leave nothing open to uncertainty or doubt. For, as is said in *Russell* v. *Place*, supra, "according to Coke, an estoppel must 'be certain to every intent;' and if upon the face of a record anything is left to conjecture as to what was necessarily involved and decided there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence. See *Aiken* v. *Peck*, 22 Vt., 262, and *Hooker* v. *Hubbard*, 102 Mass., 245.

So, if we were in error in our limitation of the decree in the chancery cause to the determination of the single question, that the complainant having failed by competent evidence to establish his title, his bill was dismissed, and that the decree is to be taken as a general decree of dismissal, then as there were two distinct matters presented by complainant's bill, failing in his contention as to either, the like result was necessary; then upon the face of the record there would be uncertainty as to the basis of the decree, and upon the author-

ity of these cases this uncertainty, unless removed by extrinsic evidence, the onus of producing which would be upon the complainant below invoking estoppel, would put the whole subject-matter at large and open to a new contention. This limitation upon the effect of *res adjudicata,* whether the former record is formally pleaded as estoppel, or is offered in evidence, as the case may authorize, has been either directly or indirectly recognized in the holdings of this court. In *Bugg* v. *Norris,* 4 Yerg., 325, there was involved the question of the effect of a pending *caveat* proceeding upon the possession of the *caveatee,* where the final judgment was in favor of the *caveator,* the court speaking through Catron, C. J. said: "It is an established rule of law, that a matter which has once been decided shall not be again litigated between the same parties; but judgment must be directly upon the point."

*Estell* v. *Taul,* 2 Yerg., 467, was an action to recover rents, and the defendant produced a former judgment in his favor by a justice of the peace and relied upon it as an adjudication. On appeal it was held that evidence was admissible to show the fact or issues determined, and that the circuit judge erred in instructing the jury, in effect, that whether the justice of the peace did or did not try the former case upon its merits, his judgment was conclusive.

In *Warwick* v. *Underwood,* 3 Head, 238, it was held that, where the former judgment is general and uncertain, parol evidence is admissible to show the fact or issue tried and involved in that judgment.

In *Brewster* v. *Galloway,* 4 Lea, 558, it was expressly ruled, that, for the adjudication to be conclusive, it shall be upon the very point brought directly in issue by the pleading.

In *Folkes* v. *The State,* 14 Lea, 14, the questions involved and the rulings of the court are well stated by the reporter as follows: "A judgment was recovered in the county court upon motion against the administrator of the clerk of the court and the sureties on the clerk's bond; the defendants afterwards undertook to remove the cause into the circuit court for a new trial by writs of *certiorari* and *supersedeas,* which writs were dismissed on motion of the plaintiffs; the defendants then appealed in error to this court, where the proceedings below were reversed and the motion dismissed. Held that the judgment was not rendered on the merits. As a general rule the onus of establishing an estoppel is upon him who invokes it, and in all cases in which the record gives no intimation whether a particular matter is determined, or where the language used leaves it uncertain and to conjecture, the party relying on the estoppel must aver the fact and support it by proof *aliunde.*"

For the purpose of ascertaining whether an estoppel could be raised upon the prior record, it was held in that case, as well as in the later cases of *State* v. *Bank of Commerce,* 96 Tenn., 591, and of *Borches* v. *Arbuckle,* 111 Tenn., 500, that the opinion of the court, where the judgment was silent upon the point, might be looked to for the purpose of determining what was really decided

by the court and intended to be adjudged. In the last named of these cases the instruction given in an earlier case between the same parties, involving the same matter of controversy, this court felt authorized to look to the direction that the circuit judge gave to the jury in the earlier case and consider its effect for the purpose of determining what was really settled in that case.

Nor are the cases of *Nicholson* v. *Patterson,* 6 Humph., 394; *Thompson* v. *Blanchard,* 2 Lea, 528; *Boyd* v. *Robinson,* 93 Tenn., 1; and *Donaldson* v. *Nealis,* 108 Tenn., 638, out of line with the cases just referred to.

In the first one of these cases the court said that a court of chancery has the power to enjoin a void judgment, but not one simply erroneous, because the court and counsel overlooked a point upon which a defense could have been successfully made. In *Thompson* v. *Blanchard,* supra, it was held that the decree for the sale of land upon a bill filed by an executor, which adjudges that the personalty of the testate's estate had been exhausted in payment of debts and special legacies unappealed from and unreversed is conclusive in subsequent litigation between the executor and the heirs, or devisees, to sell other lands, although it may appear in the later suit that the legacies in payment of which the personalty was exhausted and which in that suit were adjudged special legacies were in effect and in law general legacies. The ruling of the court in both of these cases rests upon the ground, that the merits involved were considered in the prior litigation, and though erroneously

determined, yet the former findings were conclusive as between the parties. In *Boyd* v. *Robinson,* 93 Tenn., 1, one of the questions involved was whether the minor, Annie Douglass Robinson, was concluded by prior adjudications construing two deeds conveying certain real estate, in Memphis, in which she was setting up an interest. In disposing of this question this is said in the opinion: "Annie D. Robinson is bound by the decrees made in the causes of *Annie D. Robinson* v. *Jno. D. Robinson* . . . and *Jno. B. Robinson, Administrator,* v. *Annie D. Robinson* . . . and *C. W. Metcalf* v. *Annie D. Robinson* et al. . . . She was properly before the court in these causes. The pleading in the first-named case referred to her as an unborn child and necessary party. In one case she was made complainant by next friend, and in the others she was served with process and represented by guardian *ad litem.*

In each case it was necessary to determine the interest of John D. Robinson in the real estate in order to determine in the one case the lands in which the widow was entitled to dower, and in the other to determine what lands were subject to be sold for the debts of John D. Robinson. In both cases the court must necessarily have passed upon the rights of the minor child, and in the last-named case the interest of the minor was especially under consideration. The prayer for the construction of the two deeds was sufficient to give the court authority to construe them; and whether it construed them according to the present contention is not now material."

In answer to the contention then made by the representative of the minor, that injustice had been done her in the prior decree of the court, this language was used: "Even if the court's attention was not actually called to the particular points now made in argument on behalf of the minor, Annie D., still, that would not prevent the decree from being conclusive as to the parties in said consolidated causes." It was in reference to this insistence that the court added the general proposition as to the effect of judicial estoppel. "The rule is that the plea of *res adjudicata* applies, except in special cases, not only to the points upon which the court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belongs to the subject of litigation and which the parties, exercising a reasonable diligence, might have brought  forward at the time." This proposition is to be confined in its effect to the matter which the court then had before it and cannot be taken to apply in every case where the rule of *res adjudicata* is invoked.

In *Donaldson* v. *Nealis,* supra, the counsel for defendant insisted that a decree in a prior suit, between the same parties and about the same subject-matter, dismissing complainant's bill, was conclusive against the right of complainant to maintain a second suit.   To this, however, the court replied, that the bill in the first suit having been dismissed on demurrer, raising the ground that it was not maintainable because it was a collateral attack upon a tax proceeding, was not such an adjudication of

the merits of the case as precluded the complainant from maintaining another suit to set aside the same tax sale upon another ground, to wit, that it was void for the reason that complainant was not brought before the court in the tax proceeding by proper process of publication. It is evident that the court did not regard the case at bar as falling within the general rules, just extracted from the court's argument in *Boyd* v. *Robinson.* The complainant Donaldson might have availed himself of this point of attack, in his first bill, that is, that he had not been properly made a defendant by publication, but the fact that he omitted to do so was not hinted at as a reason why relief should not be given him in the later suit.

We are satisfied that when the direct question, which we are now considering, has arisen, that the holdings of this court are in harmony with those of the supreme court of the United States, and of the courts of last resort of the several States as well as with the text of the law writers to which reference has been made.

There are several cases upon which the counsel of plaintiff in error specially relied as holding a doctrine contrary to the view announced in the cases to which we have referred above and which we approve as announcing a sound principle. To these we will briefly refer. In *Parish* v. *Ferris,* 2 Black, 606, the court held that a dismissal of the plaintiff's suit upon the merits is as conclusive upon the rights of the parties as any other judgments that might have been rendered in the case.

The action there was an ejectment to recover possession of certain land, the title to which was claimed by the plaintiff under the will of one Andrew Ferris and Elizabeth Parish, who was a daughter and only child of Andrew Ferris. The defendants in their answer claimed title under the same will, and also set up in bar a previous suit between the same parties in the courts of the State of Ohio, involving the same title, and in which a judgment or decree was rendered in their favor. It seems that the statute of Ohio is similar in effect to our statute regulating the action of ejectment, and that in such action not only the right of possession, but the title to the property claimed may be asserted. It appeared that in 1853 one Francis A. Parish, under whom the lessor in the action at bar claimed title, being in possession of the premises, instituted proceedings against the defendants in a court of competent jurisdiction in Ohio, and in his bill alleged that he was in possession, holding the property in fee, and that the defendants claimed to have some interest or estate in the same, and he prayed that they might be compelled to show what estate or interest that was, and that the court should determine that they had no valid interest or estate therein, and that the title of the plaintiff and his possession be established and quieted. Upon a comparison of the records in the two cases the court found that the title to the property involved turned upon a construction of the will of Andrew Ferris, the common source of title. The trial court, after consideration, held

120 Tenn.—44

that the plaintiff took the legal title in the premises and that the defendants had no title or interest in the same, and gave judgment accordingly. By appeal the case was carried to the supreme court of the State. That court, after holding that no estate passed to the plaintiff under the will of Andrew Ferris and the devise of his wife, and that it passed to the defendants, reversed the decision of the court of common pleas and decreed a dismissal of the bill of complainant, and remanded the cause to the district court to have this decree carried into effect. As has been already stated, the court held in this later case the plaintiff was concluded by the judgment that was set up in bar. In disposing of the question the court said: "The former suit turned upon the construction of the will of Andrew Ferris, which is the question again sought to be raised in the present suit and clearly, upon well-settled principle, this adjudication by a court of concurrent jurisdiction must be regarded as final and conclusive between the two parties." It was further said that the decision of the court could not have been rendered in favor of the defendants in that suit without determining the precise question involved in the suit at bar. We think it apparent that this case cannot be relied upon as authority for the contention made by the counsel of plaintiff in error.

*Werlein* v. *New Orleans,* 177 U. S., 390, we think equally fails in supporting the contention of plaintiff in error. Execution, issued upon a judgment recovered

by one Klein against the city of New Orleans, had been levied upon certain real property belonging to the city and situate within its limits.   Under the execution levy the property was advertised to be sold when the city filed its bill of complaint attacking the judgment and the levy, and seeking an injunction restraining the plaintiff in the execution, his attorneys and agents, from proceeding further in the advertisement and sale of the property under the writ, and that the seizure of the property by the officer might be adjudged illegal and void, and praying for general relief.   An answer was filed in which issue was taken with the allegations of the bill seeking to impeach the claim of the execution creditor and to avoid the sale under the writ.   The case came on for hearing, when the court dissolved the temporary injunction which had been granted, declined permanent injunction and dismissed complainant's bill with costs. Thereupon after the property had been taken, the property was sold under the execution levy, deed was made to the purchaser, and, by a series of mesne conveyances, the title and the possession of the property passed into one Werlein.   Later a petition or bill was filed by the city in which it was averred that the defendant Werlein was not the owner of the property, that the sale through which his predecessor in title acquired his interest was absolutely null and void, for the reason that the property had been by its donors given to the city dedicated to public use long prior to the sale in question, and that at the date of the sale, as well as ever

since, it had been unsusceptible to alienation or private
ownership, or of private possession, and that the de-
fendant's possession was illegal and in bad faith. . Upon
these allegations the court was asked, by decree, to estab-
lish the title and right of use of this property in the
public and to cancel and avoid the defendant's deed as a
cloud upon this claim. Among the defenses set up by
Werlein was that the right of Klein to proceed and sell
the land, described in the petition, under his execu-
tion was in and by the judgment in the former suit
recognized, affirmed and established, and that this right,
therefore, was *res adjudicata*. The supreme court of the
United States held that this defense was good, upon the
ground that the former, as well as the later suit, was
directed to the illegality of the sale of the property de-
scribed, and that this being so it was the duty of the
city in the former case to bring to the attention of the
court all matters which tended to show that a sale
under that execution would be illegal and would convey
no title to the purchaser. The syllabi well cover the
opinion of the court, and they are as follows, *First*: A.
city's claim that land which it holds by dedication for
public use cannot be simply sold under a judgment
against the city, is conclusively defeated by a decision
against the city in a suit for an injunction against the
sale on the ground of its illegality, although in that
suit the question of the effect of the dedication was not
presented or considered. . *Second*: A judgment against
a city in an action to restrain an alleged illegal sale of

its property under a judgment against the city is a bar to another action, after the sale, to declare the sale null and void, although, in the meantime the city has discovered that it held the property for public use only by virtue of a long prior dedication, and, therefore, claims now to hold it in a capacity different from that on which it formally sued, since there is in truth no difference in the character of the title by which a municipality holds such property and that by which it holds other property.

The case of *Parkes* v. *Clift,* 9 Lea, 524, also relied upon, presents the following facts: In 1876 W. J. Thomas and Jas. A. Parkes filed their bill in the chancery court of Hamilton county, as heirs of one Thomas Parkes, against Clift, setting up title to lands, which, it was alleged, were the property of their ancestor at the time of his death, and which defendant was claiming under an execution sale which was irregular and void. The purpose of the bill was to have the deed which defendant had, removed as a cloud upon their title. This bill was dismissed on demurrer. Subsequently James A. Parkes, having acquired the interest of his co-complainant in the first action, filed a second bill against the same party and for the same purpose. In this he stated the fact of the filing of the first bill together with all the allegations which it contained, and then added other facts which he insisted were of the character to avoid the judgment upon which the execution was issued, and under which the sale was made. Upon demurrer this

bill was dismissed upon the ground that upon its face there was disclosed the fact that the matter sought to be litigated therein was brought forward, or should have been brought forward, in the former bill. This adjudication, as well as that in the case of *Knight* v. *Atkisson*, 2 Tenn. Chy., 384, *Chiles* v. *Champenois*, 69 Miss., 603, and *Werlein* v. *The City of New Orleans*, supra, simply applies the well-settled rule, thus announced by Mr. Freeman in his work on Judgments, in section 260: "If either party fails to present all his proof, or improperly manages his case, or afterwards discovers additional evidence in his behalf, or if the court finds contrary to the evidence or misapplies the law, in all these cases, the judgment, until corrected or vacated in some appreciative manner, is as conclusive upon the parties as though it had settled their controversy in accordance with the principle of abstract justice."

We are satisfied that none of these cases contravene the principle which has been announced in the earlier part of this opinion, and that no thoroughly considered case can be found to warrant the application of the rule of *res adjudicata* to the case at bar.

This contention of the plaintiff in error out of the way, there is left open the question whether Mrs. Harris, standing alone upon her deed of September 7, 1899, can maintain this suit. We think she cannot. While the trustee of the county struck off the property in question to the treasurer of the State, yet he failed, as required by section 63, of chapter 1, of the Acts of 1897,

under the authority of which this sale was made, to file, in the office of the clerk of the circuit court, a certified list of the land so struck off by him. No such list was filed at the time of the purchase made by the plaintiff in error from the clerk. In the *Tax Title Cases,* 105 Tenn., 246, it was held, that, lacking this certified list, no title to property so sold vested in the treasurer of the State, and that a conveyance by the clerk of the property, when in this condition, was simply waste paper. "It is no more" said the court, "and offers no better result than if made by any other authorized official." After the purchase, made by Mrs. Harris, and subsequently to the filing of the chancery bill of Caesar against her, the trustee undertook to remedy the defect by filing at that late day a certified list, including the property which Mrs. Harris had purchased. The case of *Condon* v. *Galbraith,* 106 Tenn., 14, we think is conclusive against the insistence of plaintiff in error, that this filing inured by relation to validate the deed which he had obtained from the clerk. We see no way to reach any other conclusion, save to overrule that case. Its authority, however, has been recognized by this court and by the bar of the State since its decision in September, 1900, and we see no reason why at this late day it should be overruled, and especially in a case which possesses no more merit than does the one at bar. We think it clearly inferable from this record that this purchase was made by Mrs. Harris in the interest and for the benefit of a delinquent mortgageor and his family. The un-

paid taxes, out of which this controversy grows, accrued and should have been paid by this mortgageor, who was in possession, at the time, of this property. There is much in the record to suggest that they were left delinquent for the purpose of producing the very condition with which we are now dealing. The day after the two years period for the redemption had expired, Mrs. Harris, the mother-in-law of the mortgageor, and an inmate of his family, went to the clerk of the circuit court and made this purchase. If her title should be maintained as against the defendant it would be that she had acquired valuable property for a most inadequate sum. The doctrine of relation, which she now invokes, is one "wholly founded upon equitable considerations, and it will not be permitted to work a hardship, nor to validate a void act."

An effort is made to work an analogy as between a sheriff's sale of real estate under an execution, and the sale of it by the trustee, in this case, to the treasurer of the State. Unquestionably, the moment that real property is struck off by the sheriff at an execution sale to the purchaser, the latter has an equitable estate and needs only a deed from the sheriff to clothe him with a title in fee. The sale by the sheriff is in every respect a legal one. It is otherwise, however, with the sale of the county trustee in the case at bar. Without the certified list his attempted sale was absolutely ineffective. Out of it could grow neither a legal nor an equitable title. Under the statute no more interest was created by such

a sale in the treasurer of the State than if such sale had been made by one action in his individual capacity. It is for this reason that no transmutation of title took place. Nothing passed to the treasurer and, therefore, nothing could pass to the clerk of the circuit court. Such is the necessary effect of the *Tax Title Cases,* supra. As is said, equitable title is one derived through a valid contract or relation, and is based on recognized equitable principles. 16 Cyc., 90. And it is settled that in order that plaintiff may draw to himself an equitable title he must show that the one from whom he derives his right had himself a right to transfer. *Griggs* v. *Daniel,* 30 Ga., 500. Again, equitable title is defined to be the right in the party, to whom it belongs, to have the legal title transferred to him. 15 Cyc., 1087. In the case of purchaser of real property at an execution sale he has the right to call upon the sheriff, or other officer making the sale, to convey the legal title to him. But lacking the essential condition for transmutation of title, under the statute as construed by this court, Mrs. Harris occupied no such possession. She acquired no equity whatever by her purchase, and, therefore, cannot insist now that the subsequent filing of this certified list by the trustee of the county should inure to her benefit by relation so as to convey to her a title upon which she can maintain an action of ejectment.

Nor do we think that the plaintiff in error can avail herself of the prescriptive or curative limitation of three years, as prescribed in section 71, chapter 1, of the Act

of 1897. This limitation is in the following words: "No suit shall be commenced in any court of this State to invalidate any tax title to land after three years from the time said land was sold for taxes."

It is true that a similar provision in the several statutes of Mississippi and of Wisconsin have been construed by the courts of those States to cut off all impeachment of a tax title after the lapse of the statutory period. With the greatest deference for the opinion of those courts, yet, we are unable to concur with them in their holding, that this statute is an estoppel upon the owner from impeaching a tax title where jurisdictional facts are lacking to support it. We are satisfied that ample scope is given for the operation of this provision in preventing the impeachment of the title for mere irregularities in a tax sale. It is said, however, that this provision comes to us from the State of Mississippi, and in adopting it that the presumption is, that the construction placed upon this provision by the courts of Mississippi were intended to enter into and become a part of the Tennessee statute, unless it appears to be in contravention of the policy of this State.

We think that the policy of this State with regard to such a title is clearly announced in the *Tax Title Cases*, supra, and *Condon* v. *Galbraith*, supra, and that to adopt the construction obtaining in Mississippi would clearly contravene this policy.

Upon the whole record, without further elaboration, we are satisfied no error was committed by the trial judge and his judgment is, therefore, affirmed.