Merrigan, J.
Pursuant to Rule 8B(b) of the Dist./Mun. Cts. Rules for App. Div. App., the parties present an agreed statement of the case for review by the Appellate Division. The plaintiff A Ronald Chase, (hereafter “Chase”) claims to be aggrieved by the denial of Chase’s motion for summary judgment and the allowance of the defendant’s, The Simons Company, (hereafter “Simons”), motion for summary judgment. The substantive issue presented by this appeal involves the legal interpretation of language in a commercial lease. Both parties agree that there are no material facts at issue and that the case is properly disposed of by summary judgment.
The relevant frets are not in dispute and as reported by the parties, they are as follows:
*118 On June 30,1985, Simons entered into a commercial lease with Chase for use and occupancy of a portion of a building on Randolph Road, Worcester, Massachusetts, owned by Chase. The initial term of the lease was two years (e.g., August 1, 1985 through July 31, 1987). The lease provided that Simons was entitled to an “option to extend the term for eight (8) years thereafter (the Option Period) which option may be exercised by written notice to Lessor from Lessee on or before May 31, 1987.” Attached to the lease was a page entitled, “Rider 1,” setting forth “rent escalation during the option period.” The escalation schedule provided for annual rental increases in each year ensuing the preceding year. Simons continued to occupy the premises after the expiration of the initial term (i.e., after July 31, 1987) although no written notice had been sent from Simons to Chase. Sometime in April, 1993 Simons vacated the premises. Prior thereto for the period from June 1, 1987 through its departure in April, 1993 and notwithstanding the absence of a written notice to extend at the expiration of the initial term, Simons paid rent as per the escalation schedule set forth in Rider 1. Although not specifically set forth as a factual stipulation, it can also be inferred from the Agreed Statement of the Case submitted by the parties that Simons also paid as additional rent during this period “increases in real estate taxes incurred by the Lessor over the base year taxes of fiscal ’86” as required under the terms of the lease. Following the departure of Simons in April, 1993, Chase wrote to Simons demanding payment of $28,700.02 on account of Simons’ ending its tenancy sooner than the expiration of the extended term (i.e., July 31, 1995).
Both Chase and Simons treat the issue as one involving interpretation of an “option to extend.” Neither asserts that the lease language gives rise to an option to renew. Chase contends that Simons, having held over after May 31,1987 and having paid rent according to the escalation clause, has by its conduct exercised its option to extend despite the absence of a written notice referred to in the lease. Simons claims that holding over created a tenancy at will because written notice to extend was not given.
Because we are concerned with the intent of the parties regarding the option to extend, their conduct, along with the relevant written instruments, may be examined in order to determine whether on the facts stipulated to by the parties the term of the lease was extended as a matter of law. The use of the term “may” instead of “shall” concerning the written notice particularly suggests that written notice was not the exclusive means by which the lessee would be entitled to extend the term of the lease. Conduct by the lessee may be construed as signifying an intent by the lessee to exercise the option to extend. Stone v. St. Louis Stamping Company, 155 Mass. 267 (1892).
Moreover, Chase misapprehends the import of the option to extend: the lease contains an option in favor of the lessee to extend and written notice was one of the means available to the lessee of exercising that option with certainty. The right to exercise the option in question was that of the lessee. Carlisle v. Weiskopf, 237 Mass. 183 (1921). The option to extend contained in the lease was intended to burden the lessor and benefit the lessee. The giving of written notice is the term by which the lessor became bound and the lessor is therefore free, as it did in this case, to waive that requirement. Bickford v. Dillon, 321 Mass. 82 (1947); Jacob Straus v. Shaheen, 310 Mass. 646 (1941-42). Unlike an option to renew, which usually contemplates a renegotiation of one or more of the material terms and conditions of the lease, an option to extend typically implies extension of the term of a lease where the terms and conditions have already been agreed to. “[T]he provision for notice was solely for the benefit of the lessor, and he could waive it. No writing was necessary, and no formal action, if in fact the lessee elected to hold over for the longer term, and if he gave... written notice of the election, or the lessor waived the giving of notice ...,” Stone v. St Louis Stamping Company, supra at 270 (1892). Here, Simons remained in full occupancy and possession of the demised premises and paid rent according to the escalation clause for almost six years following the initial term of two years. On the anniversary date for five years, *119 Simons paid rent increases as if it were bound by terms of Rider 1 which specified rent amounts due if the option to extend was exercised. ‘The continued occupation of the premises by the tenant after the term of the original lease expired and the tender of the rent by him to the [lessor] as it became due were sufficient evidence of the election by the tenant to exercise the option to hold the premises for the extended term.” Jacob Straus v. Shaheen, Inc., supra. On these facts, Simons is estopped from denying the existence of extended term of the lease.
We think that the agreed upon facts required allowance of Chase’s motion for summary judgment. Judgment in favor of Simons is vacated and judgment for Chase is to enter.