McKiNNEY, J.,
delivered the opinion of the court.
This suit was commenced before a justice of the peace of Sumner county, on the 21st of September, 1850, by Guild against Baldridge, to recover money alleged to *296 have been paid by the former to the latter, without knowledge, at the time, of the true state of the facts. The case was taken by appeal to the circuit court, where a trial was had, and verdict and judgment rendered in favor of the defendant.
It appears from the proof, that, in the year 1842, Guild purchased from one p„avid Manning, a number of cedar logs, for which he, in part, paid said Manning, and took his receipt, bearing date, July 23, 1842.
It further appears that some years afterwards, one "Warner, a constable of Sumner county, had in his hands, certain executions against said Manning and his sureties, in favor of the clerk of the chancery court of said county; the proceeds of which, in whole or part, were to be paid over to the defendant, Baldridge. Manning, it seems, had promised the constable to let Guild have cedar logs to discharge the executions. The matter was permitted to slumber for some considerable length of time, without any step to enforce satisfaction of said executions. At length, Manning having died insolvent, the officer was urged by Baldridge to proceed to collect the money upon said executions; and the latter having understood that Manning, in his lifetime, had let Guild have some cedar timber, called on him, and informed him of the promise of Manning, that the money should be paid over to the officer in satisfaction of said execution. Guild replied to the officer that he thought he had paid the money to Manning at the time he got the logs; but if he had not, he would pay it to him. The matter rested in this way for some time. At the request of Baldridge that the matter should be closed, the officer again called on Guild, who answered as before, that he thought he had paid Manning when he got *297 the logs, but bad nothing to sliow payment, and if be bad not paid it be would pay tbe officer. Tbe officer informed Baldridge of wbat bad passed between bim and Guild. Finally, Baldridge insisted that tbe matter should be settled, and tbe officer procured Guild to go to tbe office of Baldridge. He, there, again repeated, in the. presence of Baldridge, that, “ be believed be bad pa^d tbe debt, but th^; be bad nothing to show payment; and as Manning was dead, be would have no bad feelings about it, and rather than have them, be would pay it again.” He then gave bis note to Bald-ridge for tbe amount, which was afterwards paid. Some time before tbe present suit was commenced, Guild found Manning’s receipt, and presented it to Baldridge, and insisted that tbe latter should refund the money to him; Baldridge said be would consider it, but finally failed to do so.
Tbe court, in substance, charged tbe jury, that if tbe plaintiff, believing that be bad paid the debt to Manning, but choosing to pay it again, rather than be supposed to withhold it, paid tbe money to tbe defendant, as tbe creditor of Manning, without any understanding with the defendant that, tbe money should be refunded in any event, then tbe plaintiff would not be entitled to recover; that it was important that tbe jury should ascertain whether there was any understanding between tbe plaintiff and defendant on tbe subject. If there was none, tbe defendant would be entitled to a verdict.
We will first consider, whether, in tbe foregoing instructions, tbe principles of law, applicable to tbe facts of tbe case, have been correctly laid down. We think not. That part of tbe charge which relates to an understanding between the parties, as to whether or not tbe money *298 should be refunded in any event, and which was not called for by any thing in the proof, was irrelevant. The plaintiff either had, or had not, a right to recover, irrespective of any such understanding.
The principles which, in our opinion, ought to govern this case, are correctly stated in some of the recent English cases, to which we will refer. .
The case of Kelley vs. Solare, in the court of Exchequer, 9 Meeson & Welsby’s Hep., 5é, was an action of assumpsit to recover the sum of one hundred and ninety-seven pounds ten shillings, paid to the defendant under a mistake of fact, on an insurance upon the life of her deceased husband. The policy had, in fact, lapsed, shortly before the death of Mr. Solare, by the non-payment of the last quarterly premium on the policy; and two of the directors of the office had been informed of that fact by the clerk, one of whom, thereupon wrote on the policy, in pencil, the word, “lapsed.” Some three months subsequent to this, the defendant, who was executrix, applied at the office for the payment of the sum secured on the policy in question, and two others; and the two directors who had been previously informed that the policy had lapsed, in conjunction with a third director, drew a check in her favor, for the amount, having entirely forgotten at the time, as they stated at the trial, that the policy had lapsed. Lord Abinger, chief Baron, before whom the ease was tried, expressed the opinion, that if the directors had had knowledge, or the means of hiowledge, of the policy having lapsed, the plaintiff could not recover; and that their afterwards forgetting it would make no difference. He accordingly directed a non-suit, with leave to the plaintiff to move to enter a verdict for him. A rule *299 nisi was accordingly obtained; upon tbe argument of which, his Lordship admitted, that he had “laid down the rule too wildly to the jury, when he told them, that if the directors once knew the facts, they must be taken still to know them, and could not recover by saying that they had since forgotten them.” And his Lordship added, “I think the knowledge of the' facts which disentitles the party from recovery, must mean a Tmowledge existing in the mmd at the time of pcvy-membP The other judges concurred in opinion with Lord Abinger.
Parke, in delivering his judgment, said, “I think that where money is paid to another, under the influence of a mistake, that is, upon the supposition that a specific fact is true, which would entitle the other to the money, but which fact is untrue, and the money would' not have been paid, if it had been known to the payer that the fact was untrue, an action will lie to recover it back, and it is against conscience to retain it.” He adds, “the position, that a person so paying is precluded from recovering by laches, in not availing himself of the means of knowledge in his power, seems, from the cases cited, to have been founded on the dictum of Mr. Justice Bailey in the case of Milnes vs. Duncan, (6 B. & C., 671,) and, with all respect to that authority, I do not think it can be sustained in point of law.” He furthermore says, “ if indeed, the money is intentionally paid, without reference to the truth or falsehood of the fact, the plaintiff meaning to waive all inquiry into it, and that the person receiving shall have the money at all events, whether the fact be true or false, the latter is certainly entitled to retain it; but if it is paid under the impression of the truth of a *300 fact which is untrue, it may, generally speaking, be recovered back, however careless the party paying may have. been in omitting to use due diligence to enquire into the fact. In such a case the receiver was not entitled to it nor intended to have it.”
This case was approved by the unanimous judgment of the court of common pleas, in Bell vs. Gardiner, 4 Manning & Grainger Rep., 10. The latter case was very fully considered upon the authorities, in argument. The action was assumpsit upon a promissory nóte made by the defendant, under a mistake as to the facts. The defendant had endorsed a bill of exchange, for the accommodation of the drawer, the bill was afterwards, without his knowledge, altered in a material point, so as to discharge him from liability. The bill being dishonored and payment having been demanded of him, he gave the note in satisfaction of that demand, in ignorance of the fact of the alteration of the bill.
The alteration was in the date of the bill and it appeared in proof at the trial, that the defendant had made a memorandum of the time when the bill would fall due; and that on two occasions after notice of its dishonor, he had seen the bill as altered. Lord Tindal, C. J., before whom the trial was had, left it to the jury to say whether, at the time of giving the note, the defendant had knowledge of the alteration of the bill; and that the question was not, whether he had the means of knowledge, of which there could be no doubt. The jury found for the defendant; and upon argument of the rule, msi, for judgment in favor of the plaintiff, or for a new trial, all the judges concurred in discharging the rule. Tindal, C. J., said, “There may be cases where the existence of the meaus *301 of knowledge might lead irresistibly to the inference that tbe party bad actual knowledge; but there is no conclusive rule of law that, because the party has the means of knowledge, he has the knowledge itself.
Erskine, J., said, that it must now be taken, that it is no answer, in an action for money had and received, brought to recover back iboney paid by mistake, to say that the party had the means of knowing the facts, if he had not the knowledge in reality.
The case was argued upon the same principles applicable to the action to recover back money paid by mistake, though the court regarded it a stronger case, as the defendant stood upon the invalidity of the note sought to be enforced against hiSa.
These cases are supported by previous decisions. In Lucas vs. Worswick, 1 Moo. & Rob., 293, it was held that money paid in the hurry of business, under a forgetfulness of the real state of the facts, might be recovered back. In Chatfield vs. Paxten, 2 East 471, note, Ashurst, J., says, that “where a payment has been made, not with full knowledge .of the facts, but only under a hlánd suspicion of the case, and it is found to have been paid unjustly, the party paying may recover -it back again.”
Numerous American authorities, to the same effect,' might be cited. In Story on contracts, § 422, it is laid down that “where money is paid by mistake, under an ignorance or forgetfulness of facts, or under a misapprehension of the state of the contract on which the party pays it, if he be not legally or morally obliged^ to pay it, it may be recovered back. Nor is it any defense to an action to recover such money, that the *302 other party bad the means of knowledge;” for which various cases are cited, to which we refer.
The foregoing authorities clearly establish, that to preclude a party from recovering back money paid by him, which he was neither legally nor morally bound to pay, upon the ground that the ■ payment was made with knowledge of the facts, it must appear that actual knowledge of the facts existed in his mind at the time of such payment. The party to whom the payment was made, and who, in good conscience, has no right to retain it, cannot resist a recovery upon the ground of the plaintiff’s negligence in availing himself of the means of knowledge within his reach.
The right of recovjsy proceeds upon the ground, that the plaintiff has pgátt money which he was under no obligation to pay andjwhich the party to whom it was paid had no right either to receive or to retain, and which, had the true state of the facts been present in his mind, at the time, he would not have paid.
It is wholly immaterial, therefore, to what cause the mistake may be jittributable. No sound discrimination can be made between the case of a plaintiff who is induced to part with his money, because he never, in fact, was possessed of knowledge of the facts that would have hindered him from doing so, and the case of him, who having once possessed such knowledge, is, at the time of parting with his money, laboring under an oblivion of memory in respect thereto. Forgetfulness of a material fact may, therefore,' be said to be ignorance of such fact.
Neither can a recovery be resisted on the ground that the plaintiff, at the time of payment, may have enter- *303 taíned and expressed a vague belief.\ resting on no evi-j dence and amounting to nothing like conviction or moral certainty, that he had previously paid the debt. The authorities cited require that he shall have had knowledge of the facts, and that term must be understood in its ordinary sense. To constitute a successful defense, in the absence of such knowledge, a case must be made within the rule laid down by Parked#*., before quoted, showing that the money was intentionally paid, without reference to the truth or falsehood of the facts; the plaintiff meaning to waive all inquiry into the facts, and that the person receiving shall have the money at all events, whether the fact be true or false. The case of such voluntary payment would stand rather upon the footing of a gift to the defendant, and of course, for that reason, could not be recovered back.
~We do not, of course, mean to say that the plaintiff, in a case of payment without knowledge of all the material facts, may not be repelled upon other grounds, involving different principles; we think he may; as for instance, upon the ground of injury or injustice to the defendant in a particular case.
To illustrate the latter principle, take the case of a payment, without knowledge of the facts, made, not to the original creditor of the party paying, whose debt had been previously satisfied, but to a creditor of his who received the money in good faith, ignorant of the mistake, and in satisfaction of a just demand; and who, in consequence of such payment, may have waived or lost his remedy against his debtor. In such case, it is clear, upon well established principles, that the plaintiff would not be entitled to recover. The defendant, in the given case, would be equally innocent, as the plaintiff, of the mistake; *304 and baying lost bis remedy upon tbe faitb of sucb payment, it - would not be against conscience for. bim to retain tbe money; and tbe loss must fall upon tbe plaintiff, by whose act, tbougb innocently done, it was occasioned. But when no sucb injury would necessarily result, it is wholly immaterial as respects tbe plaintiff’s right of recovery, whether tbe payment by mistake was to the. person whose debt bad been prqjiftqflisly discharged, or to a third person claiming to be a creditor of his. Tbe plaintiff’s right is precisely tbe same as against either, in tbe absence of some sucb peculiar equity as is supposed to exist in the foregoing case.
Prom tbe principles laid down in this opinion, it results that tbe judgment' must be reversed for want of proper instructions to tbe jury. But as tbe case must again be submitted to a jury, we forbear to make any more particular application of^ this principle to tbe facts of tbe case, leaving that to be done by tbe appropriate tribunal on another trial of tbe case.
Judgment reversed.