## P. M. NEAL *v.* W. B. READ *et al.*

1. CHANCERY PRACTICE. *Multifariousness.* A bill against several parties is not multifarious where all their respective rights and equities are so connected that the court can determine and adjust them.

2. CHANCERY JURISDICTION. *Mistake.* A court of equity has the jurisdiction to grant relief where an act is done, or a contract is made, under mistake or ignorance of a material fact. Thus, money paid under a mistake of fact is recoverable both at law and in equity, unless it be clear that a party making the payment intended to waive all inquiry into the fact. It is not enough that he may have had the means of learning the truth if he had chosen to make inquiry. The only limitation is that he must not waive all inquiry.

Case cited: Henry *v.* Keys, 5 Heis., 488.

3. SALE OF LAND. *Redemption. Payment. Mistake.* Where a creditor

paid money in redemption of land sold under an execution under the belief that the land had been regularly condemned, but which in fact was not, he may recover the redemption money so paid, and he is not barred of a recovery by the rule of *caveat emptor*.

Cases cited: Townsend *v.* Townsend, Peck's R., 1, 17; Lipe *v.* Mitchell's Lessee, 2 Yer., 399; Reid *v.* House, 2 Hum., 576.

FROM HAYWOOD.

Appeal from the Chancery Court.

No record found.

DEADERICK, J., delivered the opinion of the court.

This cause comes by appeal from the Chancery Court of Haywood, from the decree of the Cancellor overruling the defendants' demurrers to the complainant's bill.

The bill was filed in July, 1872, and states that on the 22d of April, 1867, one R. C. Scott confessed two judgments in favor of C. R. Taliaferro, for the aggregate sum of $818.12, before Z. C. Nolen, an acting justice of the peace of said county; said judgments were stayed by one B. P. Boyd; that on the 17th of March, 1868, the successor in office of said Nolen issued executions on said judgments, which were levied by a constable of said county on a house and lot containing eighteen acres of land, described in the levy, and lying in Brownsville in said county; defendants having no personalty upon which to levy said execution.

The papers in the two cases were returned to the

May term, 1868, of the Circuit Court of said county for judgment of condemnation of the land levied on.

The cases were docketed, and the papers entered on the minutes of the court, judgments pronounced, but, by the mistake or omission of the clerk, no judgment of condemnation was entered of record.

The bill charges that the parties believed that a judgment of condemnation had been pronounced and entered upon the minutes of the court, and so represented, and that a *venditioni exponas* issued on the 29th of June, 1868, and the house and lot were duly sold by the sheriff on the 29th of September, 1868, and was bid off by C. P. Taliaferro, the plaintiff in said judgments, at the price of $900, and within twenty days Taliaferro advanced his bid $680.26; that on the 31st of October, 1868, James L. Winfield, Sr., a judgment creditor of Scott, redeemed said property by paying Taliaferro his bid and advance thereon, and put upon the property $2,246.78, the amount of his judgment; that on the 23d of January, 1869, Jas. L. Winfield and C. P. Taliaferro redeemed and placed two judgments assigned them by Wilie Mann, amounting to $1,592.09, upon the property; and on the 3d of May, 1870, W. B. Read redeemed by paying into the hands of the clerk $5,192.21, and credited his judgment of $641.67; and on the 1st of June and 22d of August, 1870, the complainant alleges, "being informed by said Read, and believing the fact to be that said house and lot had been regularly condemned and sold, and that the same was in the hands of said Read subject to redemption, redeemed the same

from said Read, and paid him in so doing $5,947.28, amount of two judgments in his favor against said Scott."

Complainant charges in his bill that the fact of the sale of said land by the sheriff, its redemption by the several judgment creditors Scott, the acquiescence of said Scott, and the representations of said parties that the land had been condemned and was subject to redemption, induced him to redeem, and that he was ignorant of the fact that no judgment of condemnation had been rendered, and supposes the other creditors and Scott also were ignorant of the facts, and complainant was not informed of his mistake until after Scott's death, which took place in September, 1871, when he employed a lawyer to write him a deed for the land; that Read represented to him when he redeemed the land of him that the proceedings were legal and regular, and he so believed at the time of redemption.

The administrator, widow and heirs of Scott, who purchased and redeemed the land, were made defendants to the bill.

The bill prays that the judgment of condemnation be perfected and complainant's title to the house and lot be established, or that the various judgments aforesaid, which were liens upon the house and lot, be declared still to be valid and subsisting liens thereon, and that the property be sold for this satisfaction for his benefit; or if this relief cannot be granted, then that the satisfaction of said several judgments be set aside, and the parties who have received money in

redemption of said house and lot be required to restore it to the party from whom it was received, and especially that said Read be required to pay back to complainant the $5,947.28 with interest received from him.

As before stated, defendants Taliaferro, Winfield and Read have demurred, and have assigned thirty-two causes of demurrer.

The substantial grounds of demurrrer are:

1. That the bill is multifarious.

2. That complainant's remedy, if any he had, is at law, and that the Chancery Court has no jurisdiction to correct a mistake resulting from complainant's negligence.

3. That the doctrine of *caveat emptor* applies, and complainant must therefore abide by his purchase.

The bill alleges that Taliaferro acquired no title under his purchase at the sheriff's sale, because there was no judgment, and for this reason the parties successively redeeming acquired no title. This involves an investigation into the claim or title of those from whom complainant derived his claim, and they were proper parties to any proceeding in which it was necessary to pass upon the validity of their several claims. They were successive purchasers of the land sold.

Complainant's title depended upon theirs, and in one suit all their respective equities and rights can be adjusted.

A court of equity has the jurisdiction to grant relief where an act is done or a contract made, under

a mistake or ignorance of a material fact, by the parties doing the act or making the contract. 1 Story Eq., sec. 140–1–2–3.

"Money paid under a mistake of fact is recoverable both at law and in equity, unless it be clear that a party making the payment intended to waive all inquiry into the facts. It is not enough that he may have had the means of learning the truth, if he had chosen to make inquiry, the only limitation is that he must not waive all inquiry." Kerr on Fraud and Mistake, 415; Peck's R., 1, 17, appendix; 2 Yer., 399.

In the case in 2 Yer., the court say that courts of equity in this State have assumed jurisdiction to compel the restitution of money abtained by fraud or mistake. And they decreed in that case in favor of the complainant who had paid his money for land, sold under a void judgment and execution, although it is said that *caveat emptor* is the undoubted rule in relation to titles in execution sales of land. See also 2 Hum., 576, in which the court fully recognize the rule of *caveat emptor* as applying to purchasers at sheriff's sale, and say, that "purchaser must risk the title." It is added, however, "where a plain mistake, not as to the title, but as to the property levied on sold, was made by the sheriff," the purchaser was entitled to relief, and that a court of chancery is the appropriate forum for the correction of such errors.

In the case of *Henry* v. *Keys*, 5 Sneed, 488, a bill was filed to set aside satisfaction of a judgment, the plaintiff having bought defendant's land at sheriff's

sale, and the tenant in possession having had no notice of the time and place of sale. The bill was demurred to, and the demurrer was overruled, this court holding that a court of equity had jurisdiction to grant relief.

The case of *Keeling* v. *Hickerson*, 3 Head, 593, is in its leading features very similar to this case, and we have no doubt of the jurisdiction of the Chancery Court in this case.

There is no question as to the title of the judgment debtor to the land supposed to have been condemned and sold. The question is of a totally different character. The bill does not seek relief because a judgment debtor's title to the land sold was imperfect or defective, but because there was in fact no judgment and no legal sale, and no title of any sort transferred to the purchaser.

We think the Chancellor's decree overruling the defendants' demurrers was correct, and affirm the same with costs, and remand the cause for further proceedings.