STATE v. BENNETT *et al.*, AND CONSOLIDATED TAX CAUSES.

(*Jackson*, April Term, 1944.)

Opinion filed May 6, 1944.

J. H. GLOVER, of Union City, for complainant.

HEATHCOCK & ELAM, of Union City, for defendants in error.

MR. JUSTICE GAILOR delivered the opinion of the Court.

Record was filed for writ of error and *supersedeas* sought in this cause by defendant in error, Joe Pittman, to prevent the sale of two tracts of land of 80 and 61 acres, in Obion County for delinquent taxes due the State and County for the year 1934. The taxes were assessed to one J. R. McCain, but the land had been acquired by defendant. It does not appear when the 61 acres tract of land was acquired, but the 80-acre tract was acquired in the "fall of 1935." It is not insisted that defendant has ever paid, or is willing to pay, the taxes due the State and County for taxes for 1934; nor is it insisted that he acquired both or either of said tracts of land without notice of the tax lien or the maturity of said taxes.

It appears that the Union Central Life Insurance Company, one of the plaintiffs in error, on February 27, 1935, desiring to pay taxes on lands owned by it in Obion County, paid in to the County Trustee the money which, through mistake, was applied to payment of taxes on the lands here involved and in which the Life Insurance Company had no interest. Thereafter, to prevent the sale of the lands which it actually owned and on which it had undertaken to pay taxes for 1934, the Company was compelled to pay the taxes a second time.

The list of delinquent taxpayers for 1934, certified by the County Trustee to the Clerk and Master, and on which the bill was filed, does not contain the name of Defendant in error.

However, on March 21, 1942, after it had been discovered that the Life Insurance Company had paid defendant's taxes by mistake, the delinquent tax attorney filed a petition in the Chancery Court setting out the

facts of the mistake, and praying that the petition be filed in the original cause for the collection of the delinquent 1934 State and County taxes; that Joe Pittman be made a defendant in said cause; that the relief sought against other delinquent taxpayers be granted as to him; and that the original list of delinquent taxpayers certified by the County Trustee, and upon which the bill was filed under the provisions of Chapter 77, Public Acts of 1923, be amended to include the name of Joe Pittman and sale of the lands here involved, decreed for the taxes actually owed the State and County for 1934.

A copy of this petition was served on Pittman, the *subpoena* read to him by the officer, and he went to the office of the County Trustee, although the petition shows clearly that it issued from the Chancery Court, and the *subpoena* required him to appear there. An examination of the books of the County Trustee, of course, disclosed that taxes on Pittman's land for 1934 were marked "paid."

Allegedly upon the County Trustee's assurance that his taxes were paid and that he might disregard the proceeding in the Chancery Court, Pittman did nothing further about the matter, and on July 6, 1942, an order *pro confesso* was entered against him for his failure to answer.

After a second petition was filed in the cause by the Union Central Life Insurance Company against Pittman and service had upon him, he finally consulted an attorney who took immediate steps to have the *pro confesso* entered on the first petition set aside, by so moving the Court and filing an affidavit. The substance of this affidavit was an account of the visit to the County Trustee and of his reliance upon the advice of that officer that

since the books in the Trustee's office showed the taxes paid Pittman might disregard the notice from the Chancery Court. Attached to this affidavit is the defense Pittman intended to make upon the setting aside of the *pro confesso*, which was a plea of the Statute of Limitations.

The County Trustee filed a counter affidavit in which he admitted a conversation with Pittman ·about his 1934 taxes; admitted that the books of his office showed them "paid;" but denied that Pittman had said anything about or that affiant knew anything about a Chancery petition against Pittman at the time of that conversation.

Under these circumstances, the Chancellor denied the motion and refused to set aside the *pro confesso*. Thereafter he decreed a sale of the property in accord with the prayer of the petition and bill of the State and County.

It is not insisted that the defendant was a purchaser for value without notice of the tax lien, nor that he ever changed his position in reliance on the fact that the books of the Trustee's office showed that the taxes had been paid.

There are six assignments of error, presented in two groups, and we shall so consider them.

 By the first group it is insisted that the Chancellor had no jurisdiction of the land decreed to be sold because no certified list containing said ·land, and showing it encumbered with delinquent taxes for 1934, was ever made out by the Trustee nor filed in the cause.

"It has long been the rule in this state that 'taxes, when assessed, become a personal debt, and that the government is entitled to all the remedies for their collection, including an ordinary suit at law, if it chooses to resort to that remedy.' *State* v. *Duncan,* 71 Tenn. (3

Lea), 679, 685; *State ex rel.* v. *Andrews*, 131 Tenn., 554, 578, 579, 175 S. W., 563, dealing with privilege taxes imposed by a municipality.

"In *State* v. [*Memphis & C.*] *Railroad*, 82 Tenn. (14 Lea), 56, 62, this court said: 'When the assessment has been lawfully made, the tax stands like any other tax as a debt against the owner of the property, to be enforced either in the mode designated by the statute, or any other legal mode. All that the tax payer can ask, if he disputes the liability of the property to taxation, is a fair trial in any court having jurisdiction. An action of debt may now be brought in the chancery court.' " *City of South Fulton* v. *Parker*, 160 Tenn., 634, 639, 640, 28 S. W. (2d), 639, 641.

█ It cannot be said therefore that the Chancellor has any less authority on a bill for the collection of taxes to correct a mistake of fact than he has in an ordinary action in debt. That he has such authority in the latter action cannot be doubted. It is one of the fundamental principles of equity. Gibson's Suit in Chancery, section 940; *Henshaw* v. *Gunter*, 169 Tenn., 305, 87 S. W. (2d), 561.

Indeed, Code, section 1591, under the provisions of which the bill was filed, provides:

"All such suits, whether brought in the chancery court or circuit court, shall be prosecuted according to the rules of procedure of courts of chancery."

█ When the certified list of delinquent taxpayers is filed in the Chancery Court (Code, sec. 1591, *supra*), it comes within the jurisdiction of the Chancellor and he may so amend the list as to names and lands, as the principles of equity demand.

█ In the present case, when it was made to appear that the name of the defendant had been omitted on ac-

count of a mistake of fact in the Trustee's office, that the defendant had not in fact paid his taxes for 1934, and that the lands upon which they were assessed were therefore liable to sale for their payment, we have no doubt of the jurisdiction of the Chancellor, under equitable principles, to decree that the certified list be corrected accordingly.

We have carefully examined the authorities cited by defendant, as well as the case of *Harris v. Mason*, 120 Tenn. 668, 115 S. W., 1146, 25 L. R. A. (N. S.), 1011, and while no one of them was decided after the passage of Chapter 77, Public Acts of 1923, they seem to furnish authority for, rather than against our holding.

In the case of *Harris v. Mason, supra*, a tax sale was had in a proceeding in which the certified list had not been furnished by the Trustee to the Circuit Court Clerk. It was held that supplying the list to the Clerk *after the sale* could not validate it. The proceeding in *Harris v. Mason, supra*, was conducted prior to the passage of Chapter 77 of the Public Acts of 1923.

Under section 1588 of the Code, which is the reenactment of part of section 6 of the Act of 1923, the County Trustee, with the approval of the County Chairman, appoints an attorney, gives him the certified list of delinquent taxpayers and authorizes the attorney to file suits for the collection of the delinquent taxes. The Trustee is thereafter *functus officio* so far as the collection of those delinquent taxes is concerned and the active record of the collection of the taxes passes from the office of the County Trustee to that of the Clerk and Master, and it is only on the records in the latter office that any amendment would have any effect after the bill is filed in the Chancery Court.

We take judicial notice that in such tax suits it has been the established practice since the passage of

the Act of 1923, to amend the certified lists in the course of the litigation, on application of the tax attorney and order of the Chancellor, and such amendment has been permitted both to correct the names of parties and the description of lands, where no rights of intervening parties are affected.

"Any and every paper filed in any proceeding in the Chancery Court is *amendable*, unless it be so defective as to be a nullity." (Emphasis ours.) Gibson's Suits in Chancery, section 427; *Maples* v. *Tunis*, 30 Tenn., 108, 109, 111, 53 Am. Dec., 779.

The names of parties and the description of property may always be amended, if application is seasonably made and no contrary right has intervened. Code, sec. 8713; Gibson's Suits in Chancery, section 427.

We find no merit in the first three assignments of error and they are overruled.

█ The fourth fifth and sixth assignments raise a single question: That the Chancellor erred in decreeing a sale of the property involving because, at the time of the decree, the taxes on defendant's lands were not delinquent because they had been paid by the Life Insurance Company.

We cannot agree with this ingenious contention. The Life Insurance Company never intended to pay the taxes on defendant's land, and if through mistake in the Trustee's office, the money of the Insurance Company was applied to the wrong property, this cannot constitute payment.

As authority for these assignments defendant relies on the case of *Southern Coal & Iron Co.* v. *Schwoon*, 145 Tenn., 191, at page 221, 239 S. W., 398, at page 408, where it is said:

"At the time of the making of this order by the county court, the state and county taxes upon all of the lands in grant No. 4940, and all of the lands in grant 4936 except one thousand eight hundred acres, had been actually paid to the county by other persons who were asserting title to the land. Therefore neither the state nor Grundy county was entitled to compel the complainants to again pay the taxes thereon, and it was perfectly right and proper for the complainant to be released from the payment thereof, regardless of whether the complainant as the actual owner of the land or not."

That statement was made to apply to facts entirely different from those in the case before us here. Certain claimants to the real estate involved in the litigation had, in order to fortify their claim, paid the taxes. They paid the taxes on the land they intended to pay on and their money was applied by the Trustee, as they intended it to be applied. There was no mistake about it and the payment extinguished the lien of the State and County. Obviously that situation furnishes no authority for the one before us now. Money paid under mistake of fact may be recovered. *Guild* v. *Baldridge*, 32 Tenn., 295.

In some respects, the lien of the State and County for taxes is similar to that of a mortgage, and we think it so in respect of the release of the lien to the extent that the release is dependent on intention. *Lover, Strouse & Co.* v. *Bessenger*, 68 Tenn., 393.

We think, therefore, that since the Insurance Company did not intend to pay the taxes on defendant's property to which they were applied, and that since the County Trustee had no authority to release the lien of the State and County unless the taxes were paid on the property,

that there was no payment and no release of the lien. We are limiting this holding to the facts and pleadings of the present case, and not deciding the effect which intervening rights of third parties would have under similar circumstances.

All assignments of error are overruled and the decree of the Chancellor is affirmed.