**George P. PUTNAM, Administrator of the Estate of Carolyn B. Putnam, Deceased, Cross-Plaintiff and Cross-Defendant-Appellant,**

v.

**John A. SHOAF and wife, Maurine H. Shoaf, Cross-Defendants and Cross-Plaintiffs-Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

May 12, 1981.

Application for Permission to Appeal Denied by Supreme Court Aug. 24, 1981.

William M. Jeter, Memphis, for cross-plaintiff and cross-defendant-appellant.

Holt Shoaf, Milan, for cross-defendants and cross-plaintiffs-appellees.

NEARN, Judge.

This dispute is over the sale of a partnership interest in the Frog Jump Gin Company.

The Frog Jump Gin had operated for a number of years showing losses in some years and profits in others. In the time immediately preceding February, 1976, it appears that the gin operated at a loss. Originally, the gin was operated as an equal partnership between E. C. Charlton, Louise H. Charlton, Lyle Putnam and Carolyn Putnam. In 1974 Mr. Putnam died and Mrs. Putnam, by agreement, succeeded to her husband's interest. The gin operated under that control and management until February 19, 1976, when Mrs. Putnam desired to sever her relationship with the other partners in Frog Jump Gin. At that time the gin was heavily indebted to the Bank of Trenton and Trust Company, and Mrs. Putnam desired to be relieved of this liability. John A. and Maurine H. Shoaf displayed an interest in obtaining Mrs. Putnam's one-half interest in the partnership. An examination by the Shoafs of the financial records of the gin, evidenced by a statement from the gin bookkeeper, indicated a negative financial position of approximately $90,000.00. The Shoafs agreed to take over Mrs. Putnam's position in the partnership if Mrs. Putnam and the Charltons would each

pay $21,000.00 into the partnership account. The Shoafs agreed to assume personal liability for all partnership debts, including Putnam's share of any partnership debts made prior to their coming into the partnership, although the Uniform Partnership Act would only make him personally liable for debts made after his entry into the partnership unless he agreed to more. See T.C.A. § 61–1–116. Both the Charltons and Mrs. Putnam paid their respective amounts into the partnership account, and Shoaf assumed all partnership obligations as aforesaid.

At the time of his agreement the known assets of the Frog Jump Gin consisted primarily of the gin, its equipment, and the land upon which they were located. All gin assets, including the land, were held in the name of the partnership. Mrs. Putnam conveyed her interest in the partnership to the Shoafs by means of a quit claim deed. Upon Shoaf's assumption of the position of a partner, the services of the old bookkeeper were terminated and a new bookkeeper was hired.

In April, 1977, with the assistance of the new bookkeeper, it was learned that the old bookkeeper had engaged in a scheme of systematic embezzlement from the Frog Jump Gin Company from the time of Mr. Putnam's death until the bookkeeper's services were terminated. This disclosure led to suits being filed by the gin against the bookkeeper and the banks that had honored checks forged by the bookkeeper. There is no need to go into the details of all that litigation. Suffice it to say that Mrs. Putnam was allowed to intervene claiming an interest in any fund paid by the banks and the upshot of it all was a judgment paid into Court by the banks in excess of $68,-000.00. One-half of that sum, by agreement, has been paid to the Charltons as owners of a one-half interest in the gin, and the other half is the subject of this dispute between the Shoafs and Mrs. Putnam's estate. She has died pending this litigation and the case revived.

Mrs. Putnam had died before the hearing of the case, thus the only proof before the Trial Judge on the issue at hand was the pleadings, the documents signed by the parties of interest and the deposition of Mr. Shoaf. The Trial Judge dismissed the claim of Putnam and held that Mrs. Putnam had no interest in the fund. The Putnam estate has appealed, citing numerous alleged "issues."

The basis of the Trial Judge's decision was that Mrs. Putnam intended to convey all of her interest in the partnership to Shoaf and, therefore, the Court could not reform the sale and hold that the unknown right of action against the banks for payment of forged checks was not conveyed by Mrs. Putnam in the conveyance to the Shoafs.

The conveyance between Mrs. Putnam and the Shoafs is evidenced by what is styled a "Quitclaim Deed" executed by Mrs. Putnam on February 19, 1976, which is as follows:

"FOR AND IN CONSIDERATION of the sum of One Dollar ($1.00), cash in hand paid, the receipt of which is hereby acknowledged, and the assumption by Grantees of all Grantor's obligations arising or by virtue of her partnership interest in the Frog Jump Gin Company, including three notes to Bank of Tenton and Trust Company, I, CAROLYN B. PUTNAM, a widow, have this day bargained and sold and by these presents do hereby sell, transfer, convey and forever quitclaim unto JOHN A. SHOAF and wife, MAURINE H. SHOAF, their heirs and assigns, all the right, title and interest (it being a one-half (½) undivided interest) I have in and to the following described real and personal property located in the 25th Civil District of Gibson County, Tennessee, and described as follows; to-wit:"

(The legal description of the real property follows.)

"*PERSONAL PROPERTY:*

"All of the personal property and machinery in said Frog Jump Gin Company's buildings and on said properties described and used in the operation of its cotton gin plant on the abovedescribed parcel of land, including two Moss Gordin 75 saw

gin stands; one Overhead incline cleaner; stick and green leaf machine; two Moss Gordin lint cleaners; two Mitchell Feeders; two Mitchell burners; one Hardwick Etter all steel press; condensers; fans; motors; pulleys; shafting; all piping; belting and machinery and appliances and other personal property, including all cotton trailers, on said parcel of land and used in connection with the operation of said cotton gin, accounts receivable, inventory and all other assets of Frog Jump Gin Company.

"TO HAVE AND TO HOLD the said real and personal property with the appurtenances, estate, title and interest thereto belonging unto the said John A. Shoaf and wife, Maurine H. Shoaf, their heirs and assigns, forever.

"Witness my signature this the 19 day of February, 1976."

On the same day Mrs. Putnam and the Charltons executed the following agreement:

"This Agreement made and entered into on this the 19th day of February, 1976, by and between E. C. Charlton and wife, Louise H. Charlton, party of one part, and Carolyn B. Putnam, party of the other part, all of Trenton, Gibson County, Tennessee;

"WITNESSETH: THAT WHEREAS, the parties have heretofore been conducting a business, as partners, under the firm name and style of Frog Jump Gin Company; and

"WHEREAS, Carolyn B. Putnam has agreed to pay into the partnership the sum of Twenty-one Thousand Dollars ($21,000.00), the receipt of which is hereby acknowledged, and has sold and conveyed her interest in the partnership to John A. Shoaf and wife, Maurine H. Shoaf.

"NOW, THEREFORE, it is mutually agreed that the partnership be and hereby is dissolved. It is further mutually agreed that the parties do hereby release and forever discharge each other from any and all claims and demands on account of, connected with, or growing out of the said partnership, or the division of the assets thereof; and it is expressly understood and agreed that Carolyn B. Putnam is completely released and discharged from any and all liability, debts, or causes of action of the Frog Jump Gin Company, presently existing, contingent, or otherwise, including notes owed to Bank of Trenton and Trust Company, and that E. C. Charlton and wife, Louise H. Charlton assume all liability and indebtedness of the said partnership and covenant to indemnify and save harmless the said Carolyn B. Putnam in the premises. "In Witness Whereof, the parties have hereunto set their signatures, this day and date first above written."

At approximately the same time, Mrs. Putnam obtained from the Bank of Trenton a complete release from all personal liability for note indebtednesses to the Bank in the face amount of $105,000.00 in consideration of the Shoafs' assumption of all obligations of the Frog Jump Gin.

Counsel for Putnam argues that the proof shows there was no meeting of the minds to convey the unknown asset of the claim against the bank, first because its existence was admittedly unknown by both parties and second, the quit claim deed makes no mention of cash or money in the bank and the items that are there mentioned are in fact physical assets, readily ascertainable items that could be identified for the purpose of securing loans and paying debts. Further, counsel argues that the words "all other property" used in the quit claim deed must be construed in accordance with the true interest of the parties.

First, we must discover the nature of the ownership interest of Mrs. Putnam in that which she conveyed. Under the Uniform Partnership Act, T.C.A. § 61–1–101 through § 61–1–142, et seq., her partnership property rights consisted of her (1) rights in specific partnership property, (2) interest in the partnership and (3) right to participate in management. T.C.A. § 61–1–123. The right in "specific partnership property" is the partnership tenancy possessory right of equal use or possession by partners for part-

nership purposes. This possessory *right* is incident to the partnership and the possessory right does not exist absent the partnership. The possessory right is not the partner's *"interest"* in the assets of the partnership. T.C.A. § 61–1–124. The real interest of a partner, as opposed to that incidental possessory right before discussed, is the partner's interest in the partnership which is defined as "his share of the profits and surplus and the same is personal property." T.C.A. § 61–1–125. Therefore, a co-partner owns no personal specific *interest* in any specific property or asset of the partnership. The *partnership* owns the property or the asset. T.C.A. § 61–1–107. The partner's interest is an undivided interest, as a co-tenant in all partnership property. T.C.A. § 61–1–124. That interest is the partner's pro rata share of the net value or deficit of the partnership. T.C.A. § 61–1–125. For this reason a conveyance of partnership property held in the name of the partnership is made in the name of the partnership and not as a conveyance of the individual interests of the partners. See T.C.A. § 61–1–107.

This being true, all Mrs. Putnam had to convey was her interest in the partnership. Accordingly, she had no specific interest in the admittedly unknown choses in action to separately convey or retain. Therefore, the determinative question is: Did Mrs. Putnam intend to convey her interest in the partnership to the Shoafs? There can be no doubt that such was the intent of Mrs. Putnam, as she had no other interest to convey. To give any other intent to the actions of Mrs. Putnam would require a fraudulent intent on her part, which intent certainly did not exist. Therefore, the intent of Mrs. Putnam was to convey the interest she owned which was "her share of the profits and surplus." T.C.A. § 61–1–125. If we would say otherwise, that is that she intended to convey less, and thereby retain a partnership interest, Mrs. Putnam would have remained a partner unknown to the other parties and, in reality, unknown to herself. It is abundantly evident that the last thing Mrs. Putnam wanted was to remain a partner. She wanted out, and out she got.

Since neither the Shoafs nor Mrs. Putnam knew of the embezzlement by accountant Bennie Johnston, there can be no doubt that neither the Shoafs nor Mrs. Putnam knew of the valuable asset that the partnership possessed in its claim against the banks. However, it was the partnership's asset and not her personal asset. Just as she could not have retained it, had she known of it, and at the same time conveyed her partnership interest, we cannot now say she conveyed her partnership interest in 1976, but is still entitled to a share in it. This situation is no different from a hypothetical oil discovery on the partnership real property after transfer of a partnership interest with neither party believing oil to be present at the time of the conveyance. The interest in the real property always was and remained in the partnership. Of course, the transferor would not have transferred his partnership *interest* had he known of the existence of oil on partnership property; but, mutual ignorance of the existence of the oil would not, in our opinion, warrant a "reformation" of the contract for sale of the partnership interest, or warrant a decree in favor of the transferor for a share of the value of the oil.

It is inescapable to us that the interest in the choses in action remained in the partnership at all times regardless of the composition of the partners; and, it is equally inescapable that Mrs. Putnam intended to convey her partnership interest.

This is not a case of mutual mistake but one of mutual ignorance. They are not necessarily the same thing. Those cases cited by appellant as authority for a reversal of the Chancellor, such as *Trigg v. Read*, (1845) 24 Tenn. 529, 5 Humph. 529; *Neal v. Read*, (1874) 66 Tenn. 333, 7 Baxt. 333; *Tenn. V. I. & RR. Co. v. Patterson*, (1928) 158 Tenn. 429, 14 S.W.2d 726; and *State v. Bennett*, (1944) 181 Tenn. 196, 180 S.W.2d 891, are not applicable to the facts of this case. The results in those cases are primarily based on the finding that the transferor could not have intended to convey that

which the transferee received for less than valuable consideration. In this case Mrs. Putnam *had* to intend to convey her interest in the partnership. Hindsight now shows that it had more value than either party thought. But, hindsight is not a basis for a money judgment, a revision or a reformation. We wonder what would be the position of Mrs. Putnam, or the estate, had the Frog Jump Gin failed, leaving a sizeable deficit, even after the influx of the bank's refund. Would she except a partner's share of the Frog Jump Gin's liabilities for a share of the bank's refund? The question answers itself and we pose it only to show that she did not have a specific interest in any specific assets of the Frog Jump Gin, either to retain or convey. All she had was a partner's interest in a "share of the profits" (and losses) which she certainly intended to convey.

In looking at the pleadings we note that in Mrs. Putnam's complaint it states that she "sold her undivided one-half interest to John Shoaf and wife, Maurine H. Shoaf."

We also note that in the agreement made with the Charltons, on the same day, she stated that she had "sold and *conveyed her interest in the partnership* to John Shoaf and wife, Maurine H. Shoaf."

We hold that the evidence does not preponderate against the Trial Judge's finding regarding interest.

The first eight "issues" all fault the Trial Judge for failing to reform the sale of Mrs. Putnam's interest to allow her to recover one-half of the sum paid by the banks. The Trial Judge would have erred had he done so. Therefore, all of those issues are found against appellant.

The ninth "issue" pertains to an issue not raised below and is raised for the first time on appeal. We decline to treat the issue and in any event it is without merit.

The tenth "issue" faults the Trial Judge for what he did *not* find or rule. Such complaint forms no legitimate issue on appeal. See *Cope v. Hembree*, (1972 Tenn.) 487 S.W.2d 647.

The result is the judgment below is affirmed with costs of appeal adjudged against the Putnam estate.

Done at Jackson in the two hundred and fifth year of our Independence and in the one hundred and eighty-sixth year of our Statehood.

MATHERNE, J., and INMAN, Special Judge, concur.